Anthony C. EVERSOLE, Jr., Appellee,

v.

**OKLAHOMA HOSPITAL FOUNDERS ASSOCIATION, an Oklahoma Corporation, d/b/a Oklahoma Osteopathic Hospital, Appellant,**

and

**Valorie Susan Clark Parris, Defendant.**

**Nos. 69445, 69677.**

Supreme Court of Oklahoma.

July 30, 1991.

Rehearing Denied Nov. 4, 1991.

David O. Harris and Laurie Fulbright, Tulsa, for appellee.

Charles Michael Barkley, Barkley, Rodolf, Silva & McCarthy, Tulsa, for appellant.

ALMA WILSON, Justice:

The appellee, Anthony C. Eversole, Jr., was involved in a motor vehicle accident on April 21, 1984. When he was taken to the appellant hospital, he underwent a laparotomy and a surgical repair of a liver laceration on the same day. He progressed well. After spending a few days in intensive care, he was moved to the surgical floor and was making nice progress. He was advanced from no food by mouth to full liquids by mouth, to a soft diet. His intravenous fluids were discontinued. He was walking the halls. He required relatively little pain medication. On April 28, Eversole had his first regular meal and developed gas pains for which he was medicated initially with a demerol injection and subsequently with Tylenol tablets with codeine. Shortly thereafter, he felt the urge to have a bowel movement and called a nurse to assist him to the toilet. The defendant, Nurse Valorie Parris came immediately.

Nurse Parris took Eversole's right arm and attempted to support him with her left arm. A few feet from the bed, Eversole

fell forward and landed on his right side. The fall caused Eversole to experience what one physician testified was a "horrible series of complications." He underwent approximately eighteen operations, coming near death on several occasions. He was hospitalized for eight consecutive months, four at the appellant hospital and four at Mayo Clinic. His complications included infections, removal of two ribs, scoliosis (deviation of the spine), disfigurement, organic brain damage, psychomotor retardation, respiratory impairment, hearing impairment due to the massive doses of antibiotics and acute and permanent kidney failure requiring lifetime dialysis. His medical bills were approximately $610,000.00. His physician testified that Eversole would not be employable due to his lack of experience in any field, his permanent weakness from his complications, his lack of lung capacity, and his brain damage. Because of his poor physical condition, Eversole would be under a physician's care for the remainder of his life. Mr. Eversole was eighteen years old at the time of the automobile accident.

After hearing the evidence, including testimony from six physicians and five nurses, the jury returned a verdict in the amount of $1,200,000.00 in favor of Eversole against the appellant hospital. Nurse Parris, co-defendant, was exonerated by the jury. The hospital appealed the judgment and the Court of Appeals reversed and remanded the cause with instructions to enter judgment for the appellant hospital. This Court granted certiorari.

The primary issues before us are 1) whether the jury instructions were so misleading as to constitute fundamental error, and 2) if not, whether the evidence in this case is sufficient to sustain the jury verdict against the hospital.

The hospital argues that the jury instructions as given by the trial court constitute fundamental error as they were misleading and nothing more than a collection of abstract principles of law. On appellate review, no judgment shall be set aside on the ground of misdirection of the jury or for error in the procedure unless the error complained of resulted in a miscarriage of justice or a substantial violation of statutory or constitutional right. 20 O.S.1981, § 3001.1.

■ Our review of the requested and given charges to the jury and objections thereto in this record does not reveal misdirection of the jury. At trial, the hospital requested sixteen jury instructions, ten of which were given to the jury. The hospital does not complain of error in the refusal to give requested instructions. On appeal, the hospital asserts error in instructions numbered 9, 10, 11, 12, 13, 15 and 18. The hospital set out only numbers 10 and 13 *in totidem verbis* as required by Rule 15 of the Rules of the Supreme Court of Oklahoma, 12 O.S.1981, ch. 15, app. 1, amended by order on May 20, 1991, 62 O.B.J. 1779, (6/8/91). Both instruction No. 10, OUJI–CIV–9.1, instructing on the elements of liability for negligence and No. 13, OUJI–CIV–9.6, instructing on the definition of direct cause, were requested by the hospital. The hospital also requested instructions 11, 12, and 18, about which it complains on appeal. The instructions properly before this Court, Nos. 10 and 13, are not misleading. A judgment will not be disturbed because of alleged erroneous instructions, unless the jury is apparently misled thereby to the prejudice of the complaining party. *Tucker v. Colorado Indoor Trap Shoot, Inc.,* 471 P.2d 912, 919 (Okla.1970).

Even though the hospital has not properly preserved its appellate challenge to any instructions except Nos. 10 and 13, this Court has examined all instructions for fundamental error. The trial court charged the jury with nineteen instructions, which included the hospital's requested instruction on negligence, ordinary care, burden of proof and *res ipsa loquitur* instructions, as well as instructions on *respondeat superior.* These instructions properly covered the material issues asserted by the pleadings and the evidence and the legal theories of the parties. *Middlebrook v. Imler, Tenny & Kugler M.D.'s,* 713 P.2d 572, 578 (Okla.1986) and *Peoples Bank of Aurora v. Haar,* 421 P.2d 817, 821

(Okla.1966). We find no fundamental error in the instructions given.

The hospital's principal contention on appeal is that its liability is a non sequitur because Nurse Parris was exonerated by the jury. The hospital asserts that Eversole had to prove independent negligence of the hospital; that Eversole's theory of the hospital's independent negligence was based upon inadequate staffing; and that he failed to show that inadequate staffing was the proximate cause of his injuries. The Court of Appeals agreed with hospital insofar as the theory of *respondeat superior* is concerned, as a matter of law, and reviewed the evidence for proof of the hospital's specific negligence as the proximate cause of Eversole's injuries. The Court of Appeals concluded that the evidence was insufficient to sustain a jury verdict against the hospital for acts of negligence separate and apart from the acts of Nurse Parris.

▮▮▮ A jury verdict and judgment will not be reversed for error, if there is substantial evidence to support the verdict on any theory of law. *Winslow v. Watts*, 446 P.2d 598, 599 (Okla.1968). The verdict of a jury is conclusive as to all disputed facts and all conflicting statements. *Walker v. St. Louis–San Francisco Ry. Co.*, 646 P.2d 593, 597 (Okla.1982). And, where there is any competent evidence reasonably tending to support the verdict of the jury, this Court will not disturb the verdict and judgment based thereon. *Walker*, 646 P.2d at 597.

▮▮▮ On certiorari, Eversole contends that the Court of Appeals should not have limited its review to a search for specific acts of negligence of the hospital, but that it should have reviewed the evidence in accordance with the hospital's requested *res ipsa loquitur* instruction to the jury before reversing the jury verdict. We agree. The trial court gave the *res ipsa loquitur* instruction from the Oklahoma Uniform Jury Instructions, Civil, 9.13, as a modified instruction requested by the hospital.[1] The court's instruction No. 14 provided:

In addition to the rules which have been stated with respect to negligence, there are situations in which a jury may, but is not required to, find negligence from the mere fact that the accident occurred.

The plaintiff, Anthony C. Eversole, Jr., contends that this case involves such a situation, and consequently has the burden of proving each of the two following propositions:

1. That the injury was caused by Nurse Parris, who was assisting plaintiff, allowing him to fall to the floor, striking the right side of his face and chest, and that this assistance was under the exclusive control and management of the defendants.

2. That the event causing the injury to the plaintiff was of a kind which ordinarily does not occur in the absence of negligence on the part of the person responsible for the act or omission.

If you find that each of these propositions is more probably true than not true, then you are permitted, but not required, to find that the defendants were negligent.

▮▮▮ The trial court thereby provided a method for the jury to find the hospital's negligence by inference from the mere fact that the fall occurred. We find the evidence presented by Eversole is sufficient to support findings of the foundational facts [propositions] and an inference of negligence by the hospital under this instruction.

The first foundational fact which Eversole had the burden to establish was that the fall, while Nurse Parrish was assisting him, caused injury. The injuries which Eversole sustained as a result of his fall have been previously described. Eversole's evi-

---

1. The hospital requested the trial court to instruct the jury on the presumption of negligence in 76 O.S.1981, § 21. The trial court modified the instruction consistent with the OUJI instruction on the doctrine of *res ipsa loquitur*. Hospi-tal did not object to the instruction at trial and, on appeal, does not specifically complain of the instruction. Title 76 O.S.1981, § 21 is not challenged in this appeal.

dence establishes the monetary value of the injury to be in excess of $1,500,000.00.[2] And, Eversole presented substantial evidence establishing causal connection between his injuries and his fall which occurred while Nurse Parrish was assisting him. Three physicians testified that the fall was the direct cause of the horrible series of complications suffered by Eversole and that the fall disrupted the healing process. These physicians gave opinion testimony that the medical records indicate the fall was with sufficient force to cause blunt trauma to the healing liver and the subsequent infection in Eversole's liver, chest and lungs and severe loss of kidney function. One hospital document introduced by Eversole indicates the fall ruptured the healing liver. Consistent with the physicians' opinion testimony that the fall was poleaxed, Nurse Parrish testified that Eversole became limp and faint, blacked out and suddenly fell forward, twisted and hit on his right side. Only Eversole's attending physician/surgeon at the time of the fall testified that the fall did not cause Eversole's injuries, contrary to the testimony of two other physicians whose consultation had been sought by the attending physician/surgeon.

To prove causal connection between his fall and his injury, it must appear from Eversole's evidence that the "injury, in whole or in part, resulted from defendants' negligence." *Fletcher v. Meadow Gold Co.*, 472 P.2d 885, 887 (Okla.1970). Under this test, Eversole's evidence is sufficient for the jury to find the first foundational fact that the injury was caused by the fall which occurred while Nurse Parrish was assisting Eversole.

The second foundational fact which Eversole's evidence must establish is that Nurse Parrish was an instrumentality solely within the control of the hospital when the fall occurred. It is undisputed that Nurse Parrish was holding Eversole's right arm with her left arm when he lost consciousness and suddenly fell. The instruction given by the trial court reveals that it considered Nurse Parris the instrumentality. We agree that a nurse may be found to be an instrumentality solely within the control of a hospital. *St. John's Hospital & School of Nursing v. Chapman*, 434 P.2d 160, 169 (Okla.1967) (nurse's aid broke the leg of an unconscious patient). Nurse Parris was on duty at the time of the injury working for and under the control of the hospital and its staff. Eversole sought assistance from Nurse Parrish and then blacked-out or became unconscious. Similar to the situation of the patient in the *St. John's* case, Eversole and the entire situation were under the management and control of the defendant hospital and its staff. Nurse Parrish was an instrumentality solely within the control of the hospital at the time of the fall. Eversole's evidence supports a jury finding of the second foundational fact that Nurse Parrish was the instrumentality in the exclusive control and management of the hospital when she allowed him to fall resulting in injury, consistent with the instruction given by the trial court.

The third foundational fact to be established by Eversole's evidence was that such a fall does not ordinarily occur under the circumstances absent negligence on the part of the defendant. Eversole was in the care of the hospital. If medication were administered to Mr. Eversole which made him dizzy or light headed, the hospital had a duty to make certain that he did not fall in making his way to the toilet facilities. The hospital's employee, Nurse Parris, knew that Mr. Eversole needed assistance in walking to the toilet because of the medication he had taken. She had given him the medication, knew it could make him dizzy, and knew that he had requested assistance because of his physical condition. Nevertheless, Nurse Parris allowed his attempt to ambulate and to fall. Eversole's attending physician/surgeon testified that when Eversole arose to walk to the bathroom and became dizzy and light headed, that is, when he became hypotensive, he

2. The evidence establishes that Eversole has incurred medical costs in excess of $600,000.00, that future medical costs would be in approximately $500,000.00, and that Eversole's loss of wages due to the physical and mental injury would be in excess of $400,000.00.

should have been placed in a supine position to allow his blood pressure to stabilize. Two registered nurses testified that the fall was caused by improper method of ambulation of Mr. Eversole. And, the hospital director of nursing testified that the hospital's ambulation procedure could be improved.

No degree of knowledge or skill is required other than that possessed by the average person to conclude that allowing a dizzy patient to depend upon the hospital's assistance to walk and then allowing him to fall does not ordinarily occur in the care of patients and that its occurrence is presumably a negligent act. "There is an implied obligation or duty on the part of hospitals to exercise ordinary care and attention for their patients, and that care and attention should be in proportion to the physical and mental ailments and condition of the particular patient." *St. John's Hospital & School of Nursing*, 434 P.2d at 168. Eversole's evidence is sufficient to support a jury finding of the instructed third foundational fact that a fall such as suffered by Eversole does not ordinarily occur absent negligence on the part of the hospital.

■ In its appellate briefs the hospital argues that a conclusion of negligence of the hospital is inconsistent with the jury verdict exonerating Nurse Parris of negligence. We disagree. The jury could have concluded from the evidence, including the testimony of Nurse Parris, that she had acted according to the training given to her, according to her best judgment. Such a conclusion is not inconsistent with a conclusion that the hospital was negligent. Under the doctrine of *res ipsa loquitur* the jury was authorized to infer from the fundamental facts shown by Eversole that his injuries were the result of the hospital's negligence. The jury obviously concluded that allowing a medicated patient to fall after that patient has asked for assistance does not occur absent a negligent act. The negligence need not be on the part of the person who was attempting to assist the patient. It may be on the part of the person assigning, training or supervising personnel. The evidence supports an infer-

ence of negligence by the hospital as the proximate cause of Eversole's injuries under the *res ipsa loquitur* instruction.

There was no request for special findings by the jury. The jury rendered a general verdict against the hospital. 12 O.S.1981, § 588. This Court will not substitute its judgment for that of the jury in the exercise of its function as a fact finding body, *Dodson v. Henderson Properties, Inc.*, 708 P.2d 1064, 1068 (Okla.1985), and this Court will not reverse a jury verdict if supported by the evidence on any theory of law. *Winslow v. Watts*, supra.

■ Eversole did present evidence of specific negligence on the part of the hospital. On cross-examination, the hospital's witness, its director of nursing, testified that at the time of the fall, four nursing staff personnel were assigned to the surgical unit where Eversole was a patient; that the unit had twenty-six acute post-surgery patients; and, that this staff assignment did not conform with the hospital guidelines. Nurse Parrish testified that she was unaware of nursing notes warning of Eversole's reaction to pain medication. And, there was testimony that Nurse Parrish had a history of carelessness in the execution of her patient care duties; that she did not have sufficient training to be assigned to care for acute surgical patients; that the hospital did not administer proper in-house patient care training; and, that staff reports were not fully prepared. This evidence tending to show specific negligence on the part of the hospital does not prevent an instruction on the doctrine of *res ipsa loquitur*. *Fleming v. Baptist General Convention*, 742 P.2d 1087, 1092 (Okla. 1987) and *Middlebrook v. Imler, Tenny & Kugler, M.D.'S, Inc.*, 713 P.2d 572, 578 (Okla.1985).

A hospital's negligence may consist of doing something which it should not have done or omitting to do something that it should have done. *Duke Sanitarium v. Hearn*, 159 Okl. 1, 13 P.2d 183, 185 (1932) (hot water bottle burned the heel of an unconscious patient resulting in complications). Under *Fleming*, it was proper for the trial court to instruct on specific negli-

gence, *respondeat superior* and *res ipsa loquitur.* We have examined the arguments raised by the hospital concerning the specific negligence evidence, the doctrine of *respondeat superior* and the hospital's motion for a directed verdict. These issues are moot in view of our finding that there is sufficient evidence to affirm the general verdict and judgment on the grounds that the the jury could have inferred the hospital's negligence in accordance with the *res ipsa loquitur* instruction.

■ An additional issue raised by the hospital concerns testimony elicited from one of Mr. Eversole's expert witnesses, a nurse, Merry Beeson. Nurse Beeson had examined the personnel file of Nurse Parris. Nurse Beeson had testified that there were items in the file which gave her concern, the fact that the hospital apparently did not check Nurse Parris' references, and that Nurse Parris did not sign a form showing that she had attended the hospital's orientation sessions. Nurse Beeson continued to testify that there were a series of infractions in the file resulting in some disciplinary action. When she testified concerning the date of the first infraction, even though she had not described the infraction, the hospital's attorney objected because the infraction had occurred after the date of Mr. Eversole's fall. Outside the hearing of the jury, the hospital's counsel moved for a mistrial stating that both defendants, the hospital and Nurse Parris, had been prejudiced by the testimony to the point of being unable to obtain a fair trial. After considering the motion overnight, the trial court denied it but sustained an objection to the testimony as irrelevant.

Subsequently in the trial, Nurse Parris was being cross-examined by Mr. Eversole's counsel after she had just testified during direct examination that she was a good nurse. Counsel asked her if the hospital agreed that she was a good nurse to which she replied that it did. Counsel then asked if she had been "written up on a couple of occasions" to which she replied that she had been. On one occasion she "forgot to chart an INO on the CBI flow sheet." No explanation of these terms was given. Counsel then asked if she had been written up for excessive absences as well. She replied that she had been. At this point the hospital's attorney objected and asked to make a record. He renewed his motion for a mistrial, which the trial court again denied.

■ Where the trial court exercises its sound discretion in passing on a question of mistrial, its decision will not be disturbed in the absence of abuse of that discretion. *Jordan v. General Motors Corp.,* 590 P.2d 193, 195 (Okla.1979). The hospital insists that the testimony had an unmistakable prejudicial effect upon it. We cannot agree. The portions of the transcript which the hospital cites reveal no specifics concerning the infractions until Nurse Parris is cross-examined at a later point. The hospital itself raised the issue of whether or not she was a good nurse, and Mr. Eversole's attorney was entitled to cross-examine on that subject. Even with that testimony we cannot agree that the hospital was prejudiced. We find no merit in this contention.

CERTIORARI PREVIOUSLY GRANTED, OPINION OF THE COURT OF APPEALS VACATED, JUDGMENT OF THE TRIAL COURT AFFIRMED.

LAVENDER, DOOLIN, HARGRAVE and KAUGER, JJ., concur.

OPALA, C.J., concurs in judgment.

HODGES, V.C.J., and SIMMS and SUMMERS, JJ., dissent.

SUMMERS, Justice, dissenting.

Today's result is a judicial *non sequitur.* The only evidence in the case attributing plaintiff's injury to hospital's fault was that nurse Parris let him fall while she ambulated him between bed and bathroom. The jury found nurse Parris free of fault. The majority somehow bootstraps up the verdict against the hospital by misusing the doctrine of *res ipsa loquitur.* Properly applied, *res ipsa loquitur* is a rule used to establish the *presence of negligence,* not a rule permitting a finding of fault-free liability. *See Turney v. Anspaugh,* 581 P.2d 1301, 1304 (Okla.1978).

The negligence sought to be established under the doctrine here was that the hospital injured plaintiff by letting him fall. The majority concludes *res ipsa loquitur* is satisfied by assigning Nurse Parris the role of "instrumentality within the control of the hospital." But the jury found the "instrumentality" herself was free of negligence. Nothing else hooks up the hospital to the cause of the fall. Under the evidence, the asserted fact that the hospital was understaffed, even if true, was not a causal factor in the fall. Nor was there any evidence that the hospital had incorrectly taught nurse Parris how to ambulate patients. When the jurors found nurse Parris free of negligence in letting plaintiff fall they eliminated any possible way a verdict against the hospital, based on the hospital's negligence, could properly be affirmed on the evidence before them.

A verdict so internally inconsistent as this should not be allowed to afford judgment for either party. See *Chicago, R.I. & P. Ry. Co. v. Austin*, 43 Okl. 698, 144 P. 1069 (1914), wherein the plaintiff sought recovery on the theory of *respondeat superior*. There we remanded for a new trial when the jury's verdict was in favor of the defendant conductor in charge of the train but against the railroad. Rather than translating this verdict into a victory for the hospital, as did the Court of Appeals, or for the plaintiff, as does the majority, I would reject it as being hopelessly irreconcilable and remand the matter for another trial as per *Austin*, supra, 144 P. at 1071.

I am authorized to state that Vice Chief Justice HODGES and Justice SIMMS join in these views.