2012 OK CIV APP 87

Kerri ROBINSON, Plaintiff/Appellee/Counter–Appellant,

v.

SUNSHINE HOMES, INC., an Alabama Corporation, Defendant/Appellant/Counter–Appellee,

and

Broadway Homes, an Oklahoma Company; Bruce Brown, Defendants/Appellees/Counter–Appellees,

and

Jeffery Goodrich; and Jack Meeks d/b/a Jack's Mobile Home Service, Defendants.

Nos. 107,617, 107,621.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 29, 2010.

Certiorari Denied Sept. 10, 2012.

Rebecca Ann Farris, Farris Law Firm, Oklahoma City, Oklahoma, and Kenneth E. Holmes, Grace K. Yates, Holmes and Yates, Ponca City, Oklahoma, for Plaintiff/Appellee/Counter–Appellant.

John J. Gardner, Walt Brune, Northcutt, Clark, Gardner, Hron & Brune, Ponca City, Oklahoma, for Defendant/Appellant/ Counter–Appellee, Sunshine Homes, Inc.

Dorothy Lindsey Brown, John L. Scott, Esq., Enid, Oklahoma, for Defendants/Appellants/Counter–Appellees, Broadway Homes and Bruce Brown.

CAROL M. HANSEN, Judge.

¶ 1 In May 2006, Defendant, Broadway Homes [1] [Broadway], a manufactured home

---

1. Broadway Homes is the "doing business as" name for Broadway Partners, a general partnership. The partners of Broadway are a corporation [Affordable Shelters, Inc.] and a limited liability company [Bruce K. Brown & Associates].

dealer, ordered a manufactured home [home] from Sunshine Homes, Inc., [Sunshine], a manufacturer of manufactured homes. Sunshine transported the home in two halves, half A and half B. During the transport from Sunshine in Alabama to Broadway's sales lot in Edmond, Oklahoma, the trailer bearing half B had blow-outs on five of its nineteen tires. As a result of the flat tires, half B dragged continuously on a single axle for approximately 600 feet. At rest, the back of half B was sitting 10 to 12 inches lower than the front.

¶ 2 Jack Meeks [Meeks], owner of Jack's Mobile Home Service, arrived at the scene and assisted in fixing the flat tires and transporting the home to Broadway's sales lot. Broadway's office manager, Ms. Cornett, performed a "damage-on-delivery" inventory while the home was still in a disassembled state. Defendant, Bruce Brown [Brown], owner of Broadway, observed that the home had a "large amount of damage on delivery."

¶ 3 Pursuant to Broadway's dealer arrangement with Sunshine, it was Sunshine's obligation to perform the repairs. On May 23, 2006, Ms. Cornett sent a fax to Sunshine's service department describing the damage to the home.[2] Sunshine performed repairs to the home.

¶ 4 In August 2006, Defendant, Jeffrey Goodrich [Goodrich] began working for Broadway as a salesperson. In late 2006, Plaintiff, Kerri Robinson, began to consider purchasing the Sunshine home. Goodrich was the only salesperson Plaintiff dealt with during her several visits to Broadway. Plaintiff specifically told Goodrich she needed and wanted a new home, not a used home.

¶ 5 In December 2006, when she purchased the home for $82,500.00, Goodrich expressly told her there was nothing wrong with the home. The Acknowledgment and Agreement executed by Plaintiff and representatives of Sunshine, and Broadway contained the following language:

2. ...PURCHASER further acknowledges that Modular Homes of the types sold to PURCHASER are sometimes damaged while in transit from the MANUFACTURER to the RETAILER'S sale location and repairs and adjustments are sometimes made to said MODULAR homes, which may include the PURCHASER's Modular Home. These repairs and adjustments are usually made by the MANUFACTURER and/or RETAILER of the home. With full knowledge of the above, PURCHASER represents to MANUFACTURER and RETAILER and their respective assigns that PURCHASER has visually inspected the Modular home in detail and is satisfied with the Modular Home and the appearance and condition of the Modular Home,....

¶ 6 Sunshine provided a one year written limited warranty warranting the home to be free from structural defects and covering structural components of the home, the supportive structure. Defendant Brown did not participate in the sale of the home, nor was he consulted prior to the sale. Plaintiff had not met him prior to the sale.

¶ 7 In January 2007, Broadway hired Meeks to deliver and install the home on Plaintiff's property in Kaw City, Kay County. The delivery of the home occurred without incident. After Meeks "set the house," Plaintiff observed damage to the home. Plaintiff provided to Goodrich a list of the items of damage, and also faxed a list to Mr. Ballard, Sunshine's service manager. She received from Meeks a copy of the "accident report" and correspondence between Sunshine and Broadway regarding the earlier transit damage.

---

Defendant Bruce Brown testified he was the sole owner of those entities.

At trial, Brown testified that he, personally, Broadway Homes, Affordable Shelters, and Bruce K. Brown & Associates were financially insolvent. There is no documentation in the record on appeal to support Brown's testimony.

**2.** Among other things, the fax documented the damage Half B sustained, including:

(1) lots of cracks and entry hall has bowed all by kitchen and butler pantry; (2) diagonal cracks coming from the archway; (3) crown molding separating on inside and outside; (4) diagonal cracks throughout Half B; (5) ripped/torn underbelly; (6) shingles; (7) bowed walls; and (8) crack down the seam.

¶ 8 On March 21, 2007, Brown and Goodrich traveled to Plaintiff's property to assess the situation. Present were Plaintiff, her attorney, some family members, Meeks, and two repairmen from Sunshine. Brown negotiated with Mr. Ballard for Sunshine's repairmen to do the interior trim work on the home, in addition to Sunshine's limited warranty work. At Brown's request, Meeks reset the home.

¶ 9 After Sunshine finished the trim work, the repairmen returned to do the limited warranty repairs. They worked for five days in April. In the midst of the repairs, Plaintiff filed a lawsuit against Sunshine, Broadway, Brown, Goodrich, and Meeks, d/b/a Jack's Mobile Home Service.

¶ 10 In her petition, among other causes of action, Plaintiff asserted a breach of express warranty [12A O.S.2001 § 2–313] against Sunshine, Broadway, Brown, and Goodrich [all Defendants]. She also asserted, "in the alternative," a breach of implied warranty of merchantability [12A O.S.2001 § 2–314] against all Defendants. Further, Plaintiff asserted a fraud cause of action against all Defendants, alleging, among other things, the home "... was not 'new' in that it had been in a traffic accident during delivery from manufacturer to retailer." Pursuant to 15 O.S.2001 § 752, Plaintiff also asserted all Defendants violated the Oklahoma Consumer Protection Act [the Act] by committing unfair or deceptive trade practice. Additionally, she asserted a negligence cause of action against all Defendants and Jack Meeks, d/b/a Jack's Mobile Home Service, alleging negligent installation of the home. Following discovery, Plaintiff dismissed her claim against Meeks.[3]

¶ 11 In June 2009, a four day trial was held. At the conclusion of Plaintiff's case, the trial court overruled Defendants' demurrers to Plaintiff's evidence. At the conclusion of all evidence, the trial court overruled Defendants' motions for a directed verdict, and sua sponte, decided not to issue a punitive damage instruction.

¶ 12 The jury returned a general verdict for Plaintiff against all Defendants, except Goodrich, for damages in the amount of $249,858.85, and a special verdict against all Defendants, except Goodrich, finding they had violated the Act. Sunshine filed a Motion for Judgment Notwithstanding the Verdict, and also a Motion for New Trial.

¶ 13 On September 16, 2009, the trial court entered the Final Journal Entry of Judgment in accordance with the finding by the jury in their general verdict, and granted judgment jointly and severally against Sunshine, Broadway, and Brown in the sum of $249,858.85, with post-judgment interest [12 O.S.2001 § 727.1] commencing with the filing of the journal entry. It also granted judgment against Sunshine, Broadway, and Brown, in accordance with the finding by the jury in their special verdict that they violated the Act.

¶ 14 Additionally, the trial court granted Plaintiff judgment jointly and severally against Sunshine, Broadway, and Brown in the sum of $10,091.30 for her costs, with post-judgment interest. It also granted her judgment against Sunshine, Broadway, and Brown in the sum of $54,126.58, as attorney fees for Attorneys Yates and Holmes, with post-judgment interest, and in the sum of $26,880.00 as attorney fees for the Farris Law Firm with post-judgment interest.[4]

¶ 15 The trial court entered an Order denying Sunshine's Motion for Judgment Notwithstanding the Verdict and its Motion for New Trial. Later, the trial court entered an Order wherein, among other things, the trial court overruled Plaintiff's request for pre-judgment interest and for penalties under the Act.

¶ 16 Sunshine appeals [# 107,617] the September 16, 2009, Final Journal Entry of Judgment and the October 19, 2009, Order denying its Motion for New Trial. Broadway and Brown appeal [# 107,621] the September 16, 2009, Final Journal Entry of Judgment.

---

3. The trial court denied the motion by Broadway, Brown, and Goodrich to join Meeks as a third-party defendant.

4. The trial court certified "... this Final Journal Entry of Judgment as a final, appealable judgment under the provisions of 12 O.S. [section] 994."

The Supreme Court consolidated the appeals under # 107,617 as the surviving appeal number.

¶ 17 Plaintiff [Counter–Appellant] appeals the trial court's decision refusing to submit the issue of punitive damages to the jury, and the October 21, 2009, Order overruling her post-trial request for prejudgment interest and for penalties under the Act.[5]

¶ 18 The Supreme Court granted leave to file brief amicus curiae to Manufactured Housing Association of Oklahoma [MHAO]. The Supreme Court stated MHAO's "[b]rief must, however, be strictly limited to issues raised by parties and in full compliance with Oklahoma Supreme Court Rule 1.12."

## I. APPEAL OF SUNSHINE, BROADWAY AND BROWN

¶ 19 This Court, initially, will address each Defendant's arguments with regard to liability under the Act. Pursuant to 15 O.S.2001 § 753:

A person engages in a practice which is declared to be unlawful under the Oklahoma Consumer Protection Act, Section 751 et seq. of this title, when, in the course of the person's business, the person:

. . .

6. Represents, knowingly or with reason to know, that the subject of a consumer transaction is original or new if the person knows that it is reconditioned, reclaimed, used, or secondhand;

. . .

20. Commits an unfair or deceptive trade practice as defined in Section 752 of this title.[6]

¶ 20 It is undisputed no one told Plaintiff about the transit damage to the home. There was testimony it is common in the industry not to disclose to the ultimate consumer minor, cosmetic damage to a manufactured home which occurs during transit from the manufacturer to the dealer, because the cosmetic damage is repaired before purchase by the ultimate consumer. However, through expert witnesses, there was evidence the damage to the home was structural, rather than cosmetic. There also was testimony the structural damage to the home occurred in transit to the Broadway site.

¶ 21 In fact, in its brief amicus curiae, MHAO posits, without reference to Oklahoma law, that "Oklahoma law does not impose a duty upon either Broadway Homes or Sunshine Homes to report minor transit damages which occur to all modular homes being transported from the manufacturer to the point of sale."[7] Its premise is that the home sustained "minor cosmetic damage" within the "industry norm."[8] MHAO does not cite this Court to the record to support its factual assertion the home sustained only minor cosmetic damage.

### A. Sunshine

¶ 22 Sunshine argues there is no competent evidence to support the jury's finding

---

5. Neither Broadway nor Brown responded to Plaintiff's motion or appeared at the hearing on the motion.

6. Title 15 O.S.2010 Supp. § 752 provides, in part:

13. "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral;

14. "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

7. Additionally, MHAO urges the determination of the applicability of a consumer protection statute is whether the consumer transaction occurred within the state. Here, it claims, without citation to the record, ". . . the damages complained of took place in an out-of-state transaction between Sunshine Homes, Inc. an Alabama Corporation, and Broadway Homes." Amici Curiae must accept the issues as made. *Morland Dev. Co., Inc. v. City of Tulsa*, 1979 OK 96, 596 P.2d 1255. MHAO argues, for the first time on appeal, the Act cannot be applied to Sunshine because its headquarters is located in Alabama. Because this legal argument was not raised below, MHAO has exceeded the scope of its permitted amicus curiae brief.

8. The "industry norm" was never established at trial.

it violated the Act. Sunshine submits it did not conceal or misrepresent to Broadway the transit damage, and that because Broadway accepted the home, Sunshine is limited in its liability to its limited warranty.

¶ 23 Based on written communication between Broadway and Sunshine describing the transit damage to Half B of the home,[9] and because Sunshine repaired the home, there is competent evidence Sunshine knew the extent of the damage, and, nevertheless, delivered its limited warranty to Broadway for its ultimate consumer, Plaintiff.

¶ 24 Pursuant to 15 O.S.2001 § 753(6), there was competent evidence Sunshine represented, through its limited warranty, the home was new although it knew it was reconditioned.[10]

¶ 25 Additionally, pursuant to § 752(13), a deceptive trade practice may occur before, during, or after the sale of the home, and it may be written or oral. It includes a misrepresentation, an omission, or another practice which could reasonably be expected to mislead a person to her detriment.

■ ¶ 26 Plaintiff testified she never would have purchased the home if she knew about the transit damage and the repairs. There was evidence Sunshine's written limited warranty, warranting the home as free from structural defects, could have misled Plaintiff, to her detriment, to purchase the home.[11]

■ ¶ 27 The elements of a consumer's private right of action under the Act are (1) that the defendant engaged in an unlawful practice; (2) that the practice occurred in the course of the defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury. The Act is remedial in nature and is to be liberally construed to effectuate its underlying pur-

pose. *Patterson v. Beall*, 2000 OK 92, 19 P.3d 839.

¶ 28 Here, there was evidence Sunshine engaged in an unlawful practice, the practice occurred in the course of Sunshine's business, that Plaintiff purchased a damaged home which she believed was free from defect, and that had Sunshine not represented through its limited warranty the home was free of structural defects, Plaintiff would not have purchased the home.

¶ 29 In an action at law, a jury verdict is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, this Court will not disturb the jury's verdict or the trial court's judgment based thereon.... *Florafax Int'l, Inc. v. GTE Mkt. Resources, Inc.,* 1997 OK 7, 933 P.2d 282. There is competent evidence reasonably tending to support the special verdict against Sunshine for violation of the Act.

### B. Broadway

■ ¶ 30 Broadway argues the trial court had no subject matter jurisdiction to hear a claim brought under the Act.[12] The Act exempts from its purview certain actions or transactions regulated by a regulatory body acting under the statutory authority of the state. 15 O.S.2001 § 754. In Oklahoma, the Oklahoma Used Motor Vehicle and Parts Commission [Commission], *See* 47 O.S.2001 § 581 et. seq, has authority to deny, revoke, or suspend a license for various enumerated reasons to a manufactured home dealer, manufacturer, installer, or salesperson who has, among other things, "... committed a fraudulent act in selling, purchasing or otherwise dealing in motor vehicles or manufactured homes or has misrepresented the terms and conditions of a sale, purchase or

---

9. Defendant's trial exhibit # 9 is a May 23, 2006, fax from Broadway to Sunshine detailing the transit damage to Half B.

10. The term "reconditioned" was not defined for the jury. Because it is undisputed Sunshine repaired the home following the transit damage, the jury reasonably could have concluded Sunshine knew the home had been reconditioned.

11. To maintain an action under the Act, no privity of contract is required. *See Brannon v. Munn,* 2003 OK CIV APP 33, 68 P.3d 224.

12. Subject matter jurisdiction may be raised for the first time on appeal. *Indiana Nat'l Bank v. State Dept. of Human Services,* 1993 OK 101, 857 P.2d 53.

contract for sale...." 47 O.S.Supp.2009 § 584(A)(6)(d).[13]

¶ 31 However, the Commission is limited primarily to regulating licensing matters. There is no indication the regulatory activities of the Commission, which deal with grounds for suspension or revocation of licenses, extend to exempt Defendants from a lawsuit under the Act. Broadway has not cited this Court to any provision in Title 47 which provides consumer protections such as a private right of action to consumers.

¶ 32 On the other hand, the purpose of the Act provides consumers a private right of action and offers protection to them against deceptive and unfair trade practices. Defendants are not entitled to an exemption from the Act.

¶ 33 For the first time on appeal, Broadway argues the home is a "new" home pursuant to § 1105(D)[14] of the Oklahoma Vehicle License and Registration Act 47 O.S.2001 § 1101 et. seq.,[Vehicle Act][15] because a manufacturer's certificate of origin [mco] was provided by Sunshine to Broadway for the sale of home to Plaintiff. Therefore, because the home is "new" under the Vehicle Act, Broadway could not have violated § 753(6) under the Act, which provides it is unlawful to represent a home as new when it is known the home is reconditioned.

¶ 34 Broadway also argues for the first time on appeal, that it is not in violation of the Act because it complied with industry practice and with Commission's rules regarding its required forms by disclosing in the Acknowledgment and Agreement [Sunshine's Exhibit 18] only the potential for damage to the home and subsequent repair. It is well settled that only issues presented to the trial court may be urged on appeal. *Harrell v.* *Samson Resources Co.,* 1998 OK 69, 980 P.2d 99.

¶ 35 Nevertheless, Broadway seems to suggest, without any citation of authority, compliance with industry practice and Oklahoma law somehow insulates it, as a matter of law, from a private right of action against it for violation of the Act. Defendants are subject to liability under the Act.

¶ 36 Broadway points out that to establish a private right of action under the Act, a plaintiff must prove the defendant engaged in an unlawful practice. [15 O.S.2001 § 753]. However, it submits evidence does not support "... the verdict finding the industry-wide practice [of disclosure only of the potential for transit damage and repairs] to be unlawful."

¶ 37 The jury did not find the industry-wide practice unlawful; rather, it found there was competent evidence Broadway was in violation of the Act. Broadway does not argue this finding on appeal. Therefore, this Court will not disturb the special verdict against Broadway for violation of the Act.

C. Brown

¶ 38 On appeal, Brown argues the trial court erred in entering judgment against him personally on all of Plaintiff's claims.[16] He specifically argues Plaintiff presented no evidence at trial which would support a verdict against him personally.

¶ 39 A motion for a directed verdict presents "the question of whether there is any evidence to support a judgment for the party against whom the motion is made." *Woods v. Fruehauf Trailer Corp.,* 1988 OK 105, 765 P.2d 770. In ruling on such a motion, a trial court must consider as true all the evidence

---

13. The Commission may deny any application for license or suspend or revoke a license issued, or impose a fine, in accordance with the provisions of the Administrative Procedures Act. 47 O.S.Supp.2009 § 585(A).

14. Section 1105(D) provides:
D.1. "To obtain an original certificate of title for a vehicle that is being registered for the first time in this state which has not been previously registered in any other state, the applicant shall be required to deliver, as evidence of ownership, a manufacturer's certificate of origin properly

assigned by the manufacturer, distributor, or dealer licensed in this or any other state shown thereon to be the last transferee to the applicant upon a form to be prescribed and approved by the Tax Commission...."

15. The Vehicle Act governs the licensing and registration of manufactured housing.

16. At trial, Brown demurred to Plaintiff's evidence and following all the evidence, moved for a directed verdict.

and all the inferences reasonably drawn therefrom that are favorable to the party opposing the motion. *Id.* A motion for a directed verdict should be denied when there is a controverted question of fact as to which reasonable minds could differ. The motion should be granted, however, if the party opposing the motion has failed to demonstrate a prima facie case for recovery. *Guthrie v. Independent School Dist. No. I–30 of Adair County,* 1998 OK CIV APP 47, 958 P.2d 802.

¶ 40 Brown testified he is sole owner of a corporation and a limited liability company which are partners in a general partnership known as Broadway Partners. Broadway Partners does business as Broadway.[17]

¶ 41 Brown further testified that since 2000, he has not participated actively in Broadway's business. During a visit to the Broadway site, he saw the home, still covered with travel coverings, prior to its being set on the Broadway site. He admitted the home appeared to have a large amount of damage, but did not consider it more than inevitable transit damage.[18] He did not see the damage-on-delivery inventory prepared by Broadway employee, Ms. Cornett, the file regarding the home, or Sunshine's work orders. Only in late February 2007, after Plaintiff's purchase of home, did he learn about her problems with the home.

¶ 42 On the other hand, Plaintiff argues the jury properly found Brown had committed fraud upon her through deceit, nondisclosure or concealment because Broadway's employee [Goodrich, not Brown] represented the home was free from structural defects. She argues Brown, personally, worked in concert with Sunshine to conceal the true condition of the home from the ultimate consumer. However, there is no evidence of this in the record on appeal. Under Oklahoma law, a corporate officer may only be held liable for the torts he personally commits. *See Oklahoma Federated Gold and Numismatics, Inc. v. Blodgett,* 24 F.3d 136, 141 (10th Cir.1994).

¶ 43 With regard to the breach of warranty and breach of implied warranty of

merchantability claims, Brown argues Plaintiff presented no evidence which would support a verdict against him personally. It is undisputed Brown did not enter into any written or oral agreement with Plaintiff.

¶ 44 Although Plaintiff does not directly address Brown's proposition of error with regard to the breach of warranty claims, elsewhere in her answer brief she points out the jury was instructed on her claims of an agency relationship between Sunshine and Broadway. Yet, she does not argue an agency relationship existed between Brown and Broadway as a means of exposing Brown to liability on the breach of warranty claims. Nor does she cite this Court to any authority which would support Brown's liability under the breach of warranty theories under the facts of this case.

¶ 45 The standard of review of a trial court's denial of motion for directed verdict is *de novo.* *Computer Publications, Inc. v. Welton,* 2002 OK 50, 49 P.3d 732. Here, because there is an entire absence of proof showing Plaintiff's right to recover on any of her claims against Brown, the trial court erred in refusing to direct a verdict in his favor on all of Plaintiff's claims and in entering judgment on the jury verdict against him on all Plaintiff's claims. *Guthrie v. Independent School District No. I–30 of Adair County, supra.*

¶ 46 Inasmuch as the trial court properly entered judgment on special verdict for violation of the Act against Sunshine and Broadway, and inasmuch as this Court determines the trial court improperly entered judgment on jury verdict against Brown on all claims, it is unnecessary to determine whether the trial court erred in denying Broadway and Brown's motion to rejoin Meeks as a third-party defendant in Plaintiff's negligence claim.

¶ 47 Moreover, because this Court determines there is competent evidence to support the jury's special verdict for violation of the Act against Sunshine and Broadway, it is unnecessary to determine whether the trial

---

17. Brown testified he and all his companies are insolvent.

18. Brown did not know the cause of the damage was an accident.

court also properly entered judgment on general verdict against Sunshine and Broadway. A verdict will be affirmed if there is any theory of liability, supported by competent evidence, which could serve as the basis for the verdict. *Eversole v. Oklahoma Hosp. Founders Ass'n,* 1991 OK 80, 818 P.2d 456.

### D. Damages

¶ 48 Sunshine complains the trial court abused its discretion in denying its motion for new trial based on grounds the damages awarded Plaintiff were excessive and given under the influence of passion or prejudice. 12 O.S.2001 § 651(2). Broadway complains the trial court erred in entering the jury's damage award for Plaintiff in the amount of $249,858.85.

¶ 49 The measure of damages in an action under the Act is the plaintiff's actual damages. 15 O.S.2001 § 761.1(A).[19] At trial, Plaintiff's exhibit 47 was properly admitted into evidence over Sunshine's relevancy objection.[20] That exhibit entitled "Expenses Associated with Modular Home Incurred by Plaintiff," included the following categories: Initial Costs to Purchase Modular Home; Initial Set–Up Costs for Modular Home; Expenses for Repairs of Modular Home; Utility Expense; Storage Rental to Grandview Storage; Kay county Treasurer (2007 taxes); and Payments to Home National Bank.[21] Exhibit 47 indicated the total amount of expenses was $249,858.85.

¶ 50 Plaintiff testified she incurred these expenses, including her mortgage on the home, associated with the purchase of the home. Neither of the Defendants cross-examined Plaintiff regarding this testimony. Whether the damages awarded by the jury are excessive presents a question of fact.

We accord great deference to a jury's verdict and will affirm it as long as it is supported by any competent evidence. *Elmore v. Doenges Bros. Ford, Inc.,* 2001 OK CIV APP 27, 21 P.3d 65. There is competent evidence to support the jury's award of damages. Therefore, the trial court did not err in entering the jury's damages award in the amount of $249,858.85, and it did not abuse its discretion in denying Sunshine a new trial based on its contention the award to Plaintiff was excessive. *See State v. Vaughn,* 2000 OK 63, 11 P.3d 211.

### E. Costs

¶ 51 Broadway contends that the trial court abused its discretion in awarding Plaintiff costs in the amount of $10,091.30 under the Act. However, as Plaintiff points out, Broadway did not respond to her motion for costs and attorney fees nor did it appear at the hearing. As a result, Broadway has failed to preserve for review the issue of the trial court's award of costs under the Act. An issue first raised in an appellate brief will not be considered on appeal. *City of Tulsa v. Crain,* 1978 OK 2, 573 P.2d 707.

## *PLAINTIFF'S COUNTER–APPEAL*

### A. Punitive Damages

¶ 52 Plaintiff contends the trial court erred in failing to submit the issue of punitive damages to the jury. Plaintiff requested a punitive damage instruction. However, at the close of all evidence, the trial court *sua sponte* decided not to give the requested instruction. In ruling on the issues to be submitted to the jury, the trial court ruled from the bench:

19. Section 761.1 provides, in part:
A. "The commission of any act or practice declared to be a violation of the Consumer Protection Act shall render the violator liable to the aggrieved consumer for the payment of actual damages sustained by the customer and costs of litigation including reasonable attorney's fees, and the aggrieved consumer shall have a private right of action for damages, including but not limited to, costs and attorney's fees. . . . ."

20. Although Sunshine argues the trial court improperly admitted Exhibit 47 into evidence, it

does not show how the exhibit is not relevant to the issue of Plaintiff's damages.

21. The payments to Home National Bank included:

| | |
|---|---|
| Interest from January 2007 to February 2008: | $ 6,484.27 |
| Payments from February 2008 to January 2038: | $222,454.80 |
| Sub–Total: | $228,939.07 |

All right. Number one, there will be no issue of punitive damage submitted to the jury in this case. The Court is the gatekeeper for that issue and while I think, you know, there may have been a breach of contract or a concealment or misrepresentation, but I don't think there was such willful or wanton or reckless misconduct or intentional or malicious-type actions on the part of Sunshine, Broadway or Goodrich or Brown that would justify submitting the issue of punitive damages to the jury. As far as I can see, it's just a contract that went bad and here we are, but I don't think it is justified to submit punitive damages to the jury. They will not be submitted to the jury.

In order to entitle a party to punitive damages, 23 O.S.2001 § 9.1 provides, in part, that in an action for breach of obligation not arising from contract, where a jury finds, by clear and convincing evidence, the defendant has been guilty of reckless disregard for the rights of others, or the defendant has acted intentionally and with malice towards others, it may award punitive damages.

 ¶ 53 Under § 9.1, for punitive damages to be allowed there must be evidence, at a minimum, of reckless disregard toward another's rights from which malice and evil intent may be inferred. *Payne v. Dewitt*, 1999 OK 93, 995 P.2d 1088. Whether that showing has been made remains an issue of law for the trial court in its role as gatekeeper to determine, upon a defendant's challenge to the sufficiency of the evidence via a motion for directed verdict,[22] whether there is competent evidence upon which a reasonable jury could find reckless disregard, from which malice and evil intent may be inferred. *Badillo v. Mid Century Ins. Co.*, 2005 OK 48, 121 P.3d 1080.

¶ 54 The trial court determined the requisite showing was not made. Moreover, the record on appeal does not contain competent evidence from which a reasonable jury could find reckless disregard sufficient to support an inference of evil intent and malice on the part of Defendants toward Plaintiff. Therefore, the trial court was correct to withhold

the issue of punitive damages from jury consideration.

### B. Pre–Judgment Interest

 ¶ 55 Plaintiff argues the trial court erred in overruling her post trial request for prejudgment interest. Title 12 O.S.Supp. 2004 § 727.1(E), in effect when Plaintiff filed the lawsuit and when the trial court accepted the jury's verdict, provided:

E. . . . if a verdict for damages by reason of personal injuries or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations, or detriment due to an act or omission of another is accepted by the trial court, the court in rendering judgment shall add interest on the verdict at a rate prescribed pursuant to subsection I of this section from the date the suit resulting in the judgment was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment, or the date the judgment is filed with the court clerk. . . .

¶ 56 Plaintiff submits the damages awarded her were because of the detriment she suffered due to the acts or omissions of Sunshine and Broadway, and that the underlying basis for the damages was injury to her personal rights. She insists "[t]he fact that the damages were calculated based on actual expenses and verifiable numbers does not detract from the personal nature of [her] injuries. . . ."

¶ 57 Because the damages awarded in the amount of $249,858.85 were based on Plaintiff's actual expenses in connection with her purchase of the home, as demonstrated by Plaintiff's exhibit 47, they were damages for economic loss, not for injury to her personal rights. " . . . [G]iving the salient language of § 727(E) a reasonable construction-particularly in light of the examples given for the types of tortious conduct covered, i.e., bodily restraint, personal insult, defamation, invasion of privacy, injury to personal relations-leads to the conclusion that recompense for

22. All Defendants moved for a directed verdict.

the economic loss or harm . . . is not the type of loss or injury contemplated by the Legislature in § 727(E)." *Badillo v. Mid Century Insurance Company, supra.* The trial court did not err in denying Plaintiff's request for prejudgment interest.

### C. Oklahoma Consumer Protection Act Penalties

¶ 58 Plaintiff contends the trial court erred in overruling her post trial request for penalties under the Act. Title 15 O.S.Supp.1999 § 761.1(B) provides:

B. The commission of any act or practice declared to be a violation of the Consumer Protection Act, if such act or practice is also found to be unconscionable, shall render the violator liable to the aggrieved customer for the payment of a civil penalty, recoverable in an individual action only, in a sum set by the court of not more than Two Thousand Dollars ($2,000.00) for each violation. In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration by the court: (1) whether the violator knowingly or with reason to know, took advantage of a consumer reasonably unable to protect his or her interests because of his or her age, physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; (2) whether, at the time the consumer transaction was entered into, the violator knew or had reason to know that price grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by like consumers; (3) whether, at the time the consumer transaction was entered into, the violator knew or had reason to know that there was no reasonable probability of payment of the obligation in full by the consumer; (4) whether the violator knew or had reason to know that the transaction he or she induced the consumer to enter into was excessively one-sided in favor of the violator.

¶ 59 At trial, the trial court heard all the evidence which resulted in the special verdict against Sunshine and Broadway for violation of the Act. In overruling Plaintiff's request for penalties, it apparently did not find the acts or practices of Sunshine and Broadway also unconscionable. Accordingly, this Court cannot say it was error for the trial court to overrule Plaintiff's request for penalties under the Act.

### D. Supersedeas Bond

¶ 60 Pursuant to 12 O.S.2001 § 990.4(H) [23] and Okla.Sup.Ct.R.1.15(d), [24] Plaintiff requests this Court grant her judgment on Sunshine's supersedeas bond in its full amount of $408,984.32. [25] Plaintiff's request for judgment on Sunshine's supersedeas bond is granted, and the matter is remanded

---

23. Section 990.4(H) provides:

After an appeal has been decided, but before the mandate has been issued, a party whose trial court judgment has been affirmed, may move the appellate court to order judgment on the bond or other security in the amount of the judgment plus interest, appeals, costs and allowable appeal-related attorney fees. After mandate has issued, a party who has posted a bond or other security may move for exoneration of the bond or other security only in the trial court; and all motions concerning the bond or other security must be addressed to the trial court.

24. Okla. Sup.Ct.R. 1.15(d) provides:

All motions relating to a supersedeas bond must have attached a certified copy of the supersedeas bond and include a citation to the place in the record where the original of the supersedeas bond may be located. . . . All motions for judgment on the supersedeas bond must clearly state the specific dollar amount of the judgment. In any event, the judgment on the supersedeas bond may not exceed the penal sum represented by the bond. An appellee may request judgment on the supersedeas bond in its Brief-in-chief on appeal or after the opinion of the appellate court is filed and prior to the time of the issuing of the mandate. No motion for judgment on the supersedeas bond will be entertained by the Supreme Court or Court of Civil Appeals unless filed with the Clerk of the Court prior to issuance of the mandate.

25. On October 14, 2009, the trial court entered an Order Approving Supersedeas Bond wherein it approved Sunshine's motion for a supersedeas bond in the amount of $408,984.32 to stay enforcement of the trial court judgment.

Pursuant to 12 O.S.2001 § 990.4(B)(1)(a), ". . . the bond shall be for the amount of the judgment, decree or order including costs and interest on appeal where it is executed or guaranteed by an entity with suretyship powers as provided by the laws of Oklahoma." (Platte River Insurance Co. was surety).

to the trial court for determination of the amount of the judgment.

¶61 The Final Journal Entry of Judgment granting Plaintiff a judgment on special verdict for violation of the Act against Sunshine and Broadway is AFFIRMED. The Final Journal Entry of Judgment granting Plaintiff a judgment on general verdict and on special verdict for violation of the Act against Brown is REVERSED.

BUETTNER, P.J., concurs in part and dissents in part.

¶62 I concur in Part I(C)(E) and the disposition of Plaintiff's Counter–Appeal, except Part D. I dissent to Part I(A)(B) and (D), and the disposition of Plaintiff's Counter–Appeal, Part D.

HETHERINGTON, J., concurs in part, dissents in part.

¶63 I concur to the opinion with the exception of that portion of the opinion affirming the trial court's decision not to submit the issue of punitive damages to the jury.