Woon, C. J.
This is an action of ejectment, tried to a jury in the Supreme Court of Hamilton county, at the April term, 1845, a verdict rendered for the defendants, and reserved for decision in this Court, on motion for a new trial. On this motion, the whole case has been opened and spread out before us with ability and zeal. The magnitude of the controversy, from the immense value of the property in dispute,' makes it one of exciting interest, and it is creditable to the learned counsel, and to the profession to which they belong, that their efforts have been conducted with a becoming spirit of fairness and liberality, designed to the abridgement of our labors and to enlighten, not to throw shadows in our path.
The Court has not been unmindful of its responsibility in approaching this litigation. We have proceeded slowly, and devoted to it our best energies, so far as has been consistent with other important functions, and are not, therefore, responsible for the result.
I will take this occasion to say a word in reference to an allusion thrown out in the argument. Fear is entertained that the feelings of this Court are hostile to the disturbance of titles long enjoyed, and that unwarranted prejudices may defeat a recovery. For one, I must admit, that it is always, with me, a matter of serious regret when I see litigation springing up that is so often attended with such disastrous results to innocent occupants. It is only in those cases, however, where the spoil is to be divided with some mousing speculator, and when, from the state of the law, the Court may be forced to *750 aid in that result, that it feels itself- called upon to give judgment in that spirit of disapprobation which tends to discourage a course that adds nothing to the character of a profession, in other respects, proverbial for integrity and correct sentiment throughout the civilized world.
Now, let me say to the counsel for the plaintiff, if prejudice and not stern duty were to control the judgment of this Court, she might receive more than even handed justice. This would be the only danger. She is a female, claiming to have been unjustifiably stripped of the property in her youth, which is now an immense estate, and calls on this Court to aid’her to acquire its repossession. . The very nature of such- a claim, urged with force, by honorable counsel, though it may not be-supported' by- proof, is calculated to fill an abiding place in the. bosom of human nature herself, which it is difficult to resist. Let me not be understood as imputing to the counsel, in the case at bar, the setting in motion the engine of the law for the purpose to which I have before alluded. This Court would resist, in their behalf, any intimation of the kind; for, even in this exciting case, every thing has been -conducted with the most honorable and scrupulous integrity.
The facts of the case are, so far as it becomes necessary to state them, substantially these: On the 10th day of June, 1796, John Mercer was seized of the following land's, in Cincinnati: One lot in the fractional part, No. 201, containing* sixty square rods of ground; one other lot, in the fractional part of the town, now city, No. 409, of the like quantity ; also, of a four acre lot adjoining said town, No. 29; a fractional part of an out-lot on the north of No. 29, supposed to contain three acres; also, out-lot No. 28. The title of John Mercer to the above described lots and fractional part of lot north of No. 29, was admitted on the trial in the Supreme Court for the county. The plaintiff also proved, that John Mercer died in the year 1806, leaving a widow, Susan Mercer, who administered on his estate,' and that the lessor of- the plaintiff was .his only child and' heir at Jaw. ■ The plaintiff’s *751 lessor intermarried with John Heighway in the year 1812, and her husband died in 1828.
The result of these facts, thus far, in the case, leaves in the lessor of the plaintiff, a perfect legal title.
The defendants then gave in evidence, a mortgage from John Mercer and wife, dated June 10th, 1796, to Abijah and Jesse Hunt, of all the above lands described, except lot No. 409. This mortgage was conditioned for the payment of $720, with interest, on or before the 10th day of September, 1796. On the 10th day of February, 1798, Mercer and wife executed another mortgage to said Hunts, of all the aforesaid lands, except lot No. 201, and conditioned for the payment of $302.84, with interest, on or before the 13th day of February, 1799.
The mortgagor being dead, and both the . mortgages having years before become absolute at law, in April, 1808, Abijah and Jesse Hunt caused to be issued out of the Court of Common Pleas of Hamilton county, writs of scire facias upon each of the mortgages, against Susan Mercer, who had been 'appointed administratrix on the estate of her husband. The sheriff returned, in obedience to the command of these writs of' scire facias, that he had summoned the said Susan Mercer. She' made default, and, thereupon, judgment was rendered against her, as administratrix, for the debt, and damages adjudged to the mortgagees, and it was, also, ordered that they have execution therefor. On each judgment, on the 29th of March, 1809,- a fi. fa. et lev. fa. issued, on which the sheriff made a return of nulla bona, by the order of the plaintiffs. On the 4th day of March, 1811, alias writs of ii. fa. et lev. fa. issued. On one of these executions the sheriff returned : “Levied on lot No. 201, in the fractional part of Cincinnati, ‘ sixty,square rods, more or less ; one out-lot, No. 28, supposed ‘ to- contain four acres.” On the other execution the sheriff returned: “ Levied on lot 409, in the fractional part of the ‘ town of Cincinnati, being sixty square rods of ground, more ‘ or less; also, four acres, lot No. 29, and a fractional part of 15 an out-lot on the north part of said town and adjoining to lot *752 ‘ No. 29, supposed to be three acres, more or less; also,, out- £ lot No. 8, on the plat of the town of Cincinnati, containing £ four acres, strict measure.” This return is dated March 7th, 1811.
On the 2d day of July, thereafter, writs of venditioni exponas were issued, on one of which the sheriff returned $200 made, and on the other, $400. On the 5th day of November, 1811, having sold parts of the property on each execution, the whole on both, the sheriff of Hamilton county conveyed to Jesse Hunt, whom he describes to be the purchaser, at the sheriff’s sale, for the consideration of. $600, returned by him as so much money made on the aforesaid executions, all the lands described in the above levies.
Various objections were taken by the plaintiff’s counsel to the above proceedings, under which Hunt’s title was derived. It is insisted that the scire facias issued on the mortgage of 1798 is without seal, and that it was admitted to go in evidence upon the trial. These positions are both denied by the counsel for the defendant. The Judge who presided on the trial has no recollection whether the scire facias was offered in evidence or not, nor any memorandum from which it can now be ascertained. That this objection may be of any avail, the plaintiff’s counsel, who move for the new trial, having the affirmative, must establish the fact. This has not been done, and there is nothing to warrant the presumption that the scire facias was offered. It is not, perhaps, very important who - of the counsel are right or wrong on this point, in the view the Court take of it. There is now something on the writ which bears the slight impression of a seal, and, after the lapse of more than a third of a century, from the date of the scire facias to the commencement of this ejectment, the Court will presume the due and legal authentication of the writ, and that the impression of the seal has disappeared from the lapse of time, even were this the first opportunity offered to take advantage of the assumed defect in the process.
*753 There is, however, a more unfavorable point of view in which the objection may be placed. The administratrix, the mother of the plaintiff’s lessor, and who represented her interest in the proceedings at law, on the mortgages, had a much earlier opportunity to object to the sci. fa. for its invalidity. She was summoned to plead to another sci. fa. to' revivé the original judgment on the mortgage of 1798. Her plea was filed, but nothing heard of the want of a seal, and the original judgment was revived. Under these circumstances it is now perfectly immaterial whether the original sci. fa. was sealed or not; nor does this opinion at all conflict with the decisions of this Court, that judicial process must be under seal. A party may waive a legal right by positive act, or lose it by neglect.
Other objections were urged to both the writs of sci. fa.— 1st. That they should have issued against the heir and not against the administratrix. 2d. That the lands descended to the heir on the death of John Mercer, in 1806, when there was no law authorizing the seizure and sale of mortgaged premises. The first objection is disposed of by the case of Biggentaff v. Loveland, 8 Ohio Rep. 44. To that decision this Court adheres, for the reasons therein expressed. ' The second objection would have been of far more importance if the writs of sci. fa.' had been issued before the supplemental law of 1807. The act of 1805 was in force when the supplemental act of 1807 was passed; Swan’s Land Law, 355. The object of this act was to extend the provisions of the statute of 1805 to mortgages which had before been executed, and to which, as the law then stood, the remedy by sci. fa. did not apply, as the act of 1805 was entirely prospective in its terms. This supplemental act extended the samo remedy to mortgages executed before the passage of the law as existed by the act then in force. My impression is, that it was never intended, as is claimed, after judgment, that the money should be made by execution according to the law in force, when the ’¡mortgage ivas executed; but to leave the sale of the land for the collection of the money, to the law in force when the execution issued. Otherwise, the *754 burden would be thrown on the sheriff, when an execution carne ^nto hands, of searching the'record for the'date of the that he might not mistake the law under which his proceedings must be conducted. -,
In the third place, it .is said, these judgments were void against the administratrix, but, if good against her, could'not-affect the lands, because they were general/ Before we'declare the-effect of these'judgments, all reasonable presumptions and intendments should be-made,' after'the lapse of nearly forty years, in their favor. 'The act of'1795, in force when the mortgages were executed, provides that the judgment shall be entered, that the plaintiff'in the sci. fa. shall have execution by lev. fa. dirécted/to-the proper officer. , The sci.' fa. on each recites the mortgage on which it issued, and the mortgages the obligations, each, respectively, they were given to secure'. ’ A definite déscription of'the lands on which, by law, the judgments operate, is contained in - each' of the 'mortgages. • The entry of judgment is in these words:- ■ “ And the said Susan ' ‘ says nothing in. bar or preclusion of the action aforesaid, of ‘ the skid Jesse and Abijah, therefore it is considered by.tlie ‘ Court that the said Jesse and Abijah'recover of the said Susan, ‘ administratrix, as aforesaid, .their debts, aforesaid, and dama- ‘ ges, &c., by the court to the said Jesse and'Abijah adjudged ; ‘and that they-have execution therefor.” . The amount for which execution was to be issued; and the amount of debt and damages áre riot found in 'express words. Those judgments cannot be considered as void, for these reasons: the substance is on the - record — the. amount of debt and damages is- the amount due on the mortgages —r- arid the law fixes the amount of the lev-, fa. to.be ithe same.' These things .are reducible to certainty,-from fixed data, by the ordinary rulés Of. reference and'computation; and in the early-period óf our judicial history,- when the senses of parties were Unsharpened by the rapid' increase of the value of property, of which they had been honestly deprived by the forms of law, that the plain and ordinary señse'of a thing, if expressed on the record, constituted a suf *755 ficient judgment, was, doubtless, supposed by all. Nor were they, in our opinion, far out of the way. The proper writs of execution, and for the legal amounts, did issue, and this was sufficient; Earl’s Lessee v. Shoulder, 6 Ohio Rep. 416, is in point; also, Lessee of Paine v. Mooreland, decided at the present term. In this last case the law required an order to be issued for the sale of the land attached, after judgment. A fi. fa. in the ordinary form was directed to the sheriff, which was not only levied on the identical land attached, but more, and this Court held the sale on the execution a substantial compliance with the statute, sufficient after the intervention of many years; 15 Ohio Rep. The objection that these writs of execution were not writs of lev. fa. exclusively, but also of ñ. fa., is of no importance at this late day. Besides, the evidence of Gano and McMasters proves that the judgments are the same on which the executions issued.
The deed executed by the sheriff is supposed to be defective, for the want of a proper acknowledgment. This point has been argued with great ability, as if it'were the turning point in the controversy ; but, without following counsel through the varying language of the fourth and sixth sections of the act of 1795, in which the deed, on such sale, is provided for, and ascertaining the precise meaning of the word recovered, as there employed, in the supplemental law of 1807,1 have come to the conclusion that the Legislature intended deeds, upon sales of mortgage property, to be acknowledged in the same manner as in sales of real estate on ordinary judgments. The execution law of 1805 was in force when these judgments were rendered, and authorized the acknowledgment, by the sheriff, in the same manner that acknowledgments of other grantors were required to be made. This was the general rule, and no reason is perceived to exist for a construction of the law of 1807, making sheriffs’ deeds, on mortgage sales, an exception; and the acknowledgment in question is in the ordinary form. But it is said that the law of 1795 was the law of the contract, and that the intention of the Legislature was, evidently, that the whole *756 proceedings should be controlled by it. The law of a contract, it is true, cannot be so changed as to impair the force of its obligation, but the remedy may be moulded into any shape to suit legislative discretion; but there is nothing in thé act from which the design claimed is by any means evident, or opposed to the construction to which I have alluded. On sales of mortgaged premises, and lands upon ordinary judgments, there are many reasons why distinctions should not be made in the form of the acknowledgment of the conveyance. Uniformity in the rule of action in similar cases, prescribed for ministerial officers, conduces to accuracy and regularity, and diminishes the chances of confusion, lessens the probability of error, gives stability to judicial proceedings, and security to rights and interests acquired under them. By the act of 1805, the sheriff was authorized to acknowledge deeds before a Justice of the Peace. This deed is so acknowledged, and we'hold it to be sufficient, without an acknowledgment in open Court, and find no serious difficulty in supporting this judicial sale throughout. This, alone, is decisive of the case.
It is supposed, however, that the judgment on the mortgage of 1798, will not sustain the proceedings had under it, for the reason, that it had but a single witness. If this were a defective execution of it, advantage should have been taken on the return of the sci. fa.; but, though personal service was made upon the writ, on the administratrix, judgment was permitted to be obtained. But this was not all. This judgment was, afterwards, revived, and no objection taken to the original judgment on this ground; and if the objection could, at any time,. be made available, that time was permitted to pass by, and the door is now closed against it. But admitting the mortgage was defective, it cannot for a moment be claimed the judgment founded upon it was void,. It was merely erroneous, and, until directly attacked and reversed, is equally available to sustain a sale made under it, as if it were not liable to such objection.
*757 There is another point in the defence equally fatal to any right of recovery by the plaintiff. The mortgage of 1796 covered the entire premises described, except lot 409, which is not in controversy. This mortgage was well executed, though the mortgage of 1798 had but one witness. Jesse Hunt took possession, under his sale, upon both mortgages. He got peaceably into the possession, which possession, the defendants claiming under him have since enjoyed by virtue of his title. John Mercer being in life when the mortgage of 1796 became absolute, the legal title, as between the parties, passed to Jesse and Abijah Hunt, and it remains there until the mortgage is satisfied. If, therefore, the proceedings under the sale are invalid to pass title, there is no satisfaction of the mortgage, and the defendants hold this legal title of their ancestor, Jesse Hunt; and, in this view of the case, there is nothing in the plaintiff but an equity of redemption, and her only remedy is by bill in chancery, to redeem.
To avoid this aspect of the case, a compromise is relied upon, between Hunt and the administratrix, by which portions of the land, not now in controversy, were relinquished to her, and this in dispute, with others, retained, and that a release was then executed by Hunt from all mortgage demands. It is urged that the administratrix, mother of the plaintiff’s lessor, could not bind her by any such agreement, and that the plaintiff’s lessor may discard the whole consideration to Hunt, for the execution of the release, and hold on to the release, as a satisfaction and merger of the mortgage. This would be playing fast and loose with a vengeance, and a proposition so monstrously unjust cannot for a moment be entertained. The compromise was an entire transaction, and if good in party it is for the whole. But had not the administratrix the perfect right to enter into that compromise ? The plaintiff’s lessor never had any legal title in the premises, without the compromise, or with it, so far as this controversy is embraced. Her father was in esse when the mortgage became absolute ; the legal title passed, therefore, to the Hunts, and not to her by descent east. An *758 equity of redemption was not, then, considered as a chattel real, descendable to. the heir, but as personal, to be controlled by the administratrix, and for this reason, the law in force at the commencement of' these suits, authorized, after condition broken, a sci. fa. to be issued and served on the adrhinistrator.— Where, then, is even the equitable title of ihe plaintiff ’s lessor 1
Many other points have been made in the case, by the learned counsel on both sides. They have been examined,- though not alluded to in this opinion. In this, like most cases'which swell to an enormous bulk, when examined,' it is found to turn upon either of two or three points, arid the numerous ones, besides, which are put forth, are merely skirmishes, to ward off the attack from theimain body. , , ■
Allusion, in the argument, has- been made to' the character .and conduct of-Jesse Hunt; but, after the most careful examination, we find nothing in the case' inconsistent with the strictest integrity, honesty, and. even liberality, in his dealings with the ancestors.of the plaintiff’s lessor, in this whole transaction. We think no substantial error intervened, on the trial, to war-' rant this.Court' in.interfering with the verdict-; and, indeed, upon the whole' case, which has been considered, that the plaintiff is. not entitled to recover.

Motion ■ Overruled.