OSCN Found Document:U.S. BANK NATIONAL ASSOC. v. HILL

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 U.S. BANK NATIONAL ASSOC. v. HILL
2023 OK 86
Case Number: 118680
Decided: 09/12/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 86, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

U.S. BANK NATIONAL ASSOCIATION, As indenture trustee for Sasco Mortgage Loan Trust 2004-GEL2 Mortgage Backed Notes, Series 2004-GEL2, Plaintiff/Appellant,
v.
CARMELA D. HILL, Defendant/Third-Party Plaintiff/Appellee/Counter-Appellant,
v.
NATIONSTAR MORTGAGE, LLC, Third-Party Defendant/Appellant.

ON CERTIORARI FROM THE COURT OF CIVIL APPEALS, DIVISION I
DISTRICT COURT OF TULSA COUNTY, STATE OF OKLAHOMA
HONORABLE REBECCA NIGHTINGALE, TRIAL JUDGE

¶0 Borrower pursued counterclaims against bank and its mortgage servicer following bank's dismissal of its foreclosure action against borrower. A jury returned a verdict against bank on borrower's wrongful foreclosure claim and a verdict against the mortgage servicer on multiple claims including violations of the Oklahoma Consumer Protection Act (OCPA) and the Fair Debt Collection Practices Act (FDCPA). The trial court awarded attorney's fees and costs to borrower. Bank and mortgage servicer appealed and borrower counter-appealed. The Oklahoma Court of Civil Appeals dismissed in part borrower's appeal and found neither the OCPA or the FDCPA was applicable. It reversed the attorney's fee award and reduced the amount of awarded costs. In addition, it reversed the wrongful foreclosure judgment against bank and affirmed the remainder of the judgment which concerned breach of contract and tort claims against the mortgage servicer.

COURT OF CIVIL APPEALS' OPINION VACATED;
HILL'S COUNTER PETITION IN ERROR DISMISSED IN PART;
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; 
CASE REMANDED FOR FURTHER PROCEEDINGS

Michael J. McKleroy, Jr., Akerman LLP, Dallas, Texas for appellants U.S. Bank National Association and Nationstar Mortgage, LLC[1]

Kris Ted Ledford, Ledford Law Firm, Owasso, Oklahoma and Patrick H. Kernan, Wilburn, Masterson & Hampton, Tulsa, Oklahoma, for appellee/counter-appellant, Carmela D. Hill

Combs, J.

I. FACTS AND PROCEDURAL HISTORY

¶1 On September 6, 2002, the Defendant/Third-Party Plaintiff/Appellee/Counter-Appellant, Carmela D. Hill (Hill) executed a promissory note and mortgage in favor of Specialized Financial Services, Inc., dba SFM Mtg (SFM). According to the note, Hill agreed to pay $100,130.00 plus interest at a yearly rate of 10.130%. The note required Hill to pay on the first day of each month and stated a default would occur if she did not pay the full amount of each monthly payment on the date it is due. It also provided that if Hill still owed any "amounts" under the note, she will pay those amounts in full by the maturity date, October 1, 2032. The Plaintiff/Appellant, U.S. Bank National Association, As indenture trustee for Sasco Mortgage Loan Trust 2004-GEL2 Mortgage Backed Notes, Series 2004-GEL2 (U.S. Bank) owned Hill's loan since June 1, 2004. Aurora Bank, FSB fka Aurora Loan Servicing, LLC (Aurora) was the mortgage servicer prior to the Third-Party Defendant/Appellant, Nationstar Mortgage, LLC (Nationstar).

¶2 Hill breached her loan obligations numerous times over the ten-year period following the original loan date. Aurora filed at least four foreclosure actions against Hill and entered into many repayment agreements with her. On June 5, 2012, Hill was notified by Aurora that her "mortgage payments of $3,347.72 for the months of May 01, 2012 and June 01, 2012 plus accrued late charges of $36.93 are past due." Less than a month later, Nationstar began servicing the loan effective July 1, 2012. On September 4, 2012, Nationstar notified Hill by letter that it was seeking to collect a debt from her in the amount of $4,547.92 which includes the sum of payments which came due on or after July 1, 2012, the date the letter claimed was the date of default. As the new servicer of the loan, Nationstar sued to foreclose the mortgage and obtained a judgment on June 25, 2013.[2] In July 2013, Nationstar entered into a loan modification agreement with Hill and thereafter vacated the judgment of foreclosure without prejudice.

¶3 Almost a year later, Hill was again notified by Nationstar that she was in default. On September 2, 2014, Hill contacted Nationstar and verbally applied for a deed in lieu of foreclosure (DIL). Nationstar contacted a law firm which in turn contacted Stewart Title to issue any necessary title commitments. Stewart Title issued a title commitment effective September 24, 2014, and required the mortgage to be released as a condition to issuing any title policy. Hill was informed that she was conditionally approved for the DIL and Nationstar sent her the required documents which she signed in November 2014. Nationstar executed the DIL agreement as well as a release of mortgage and a deficiency waiver and forwarded the documents to its law firm to complete the DIL. Nationstar also paid Hill $8,000.00 and reported the loan to the credit reporting agencies as satisfied through a DIL. Nationstar did not record the DIL or the mortgage release.

¶4 In June 2015, Nationstar entered into a contract to sell the property to a third party. Nationstar's law firm prepared an assignment of mortgage from the original lender (SFM) to Nationstar. The law firm believed this assignment was necessary to clear any assignment chain issues and it could not record the DIL or release of mortgage without the assignment. Nationstar was unable to locate SFM and therefore it was unable to execute the assignment required by its law firm. Believing it had the right to do so, Nationstar canceled the DIL on February 1, 2016 and returned the loan to the status it was in prior to the DIL approval. Nationstar resumed normal default servicing and referred the matter to foreclosure. On March 16, 2016, Nationstar executed a corporate assignment of mortgage to U.S. Bank. On March 29, 2016, U.S. Bank filed its petition for foreclosure. Thereafter, Hill began receiving more than 50 written communications from Nationstar advising her that she owed money on her mortgage loan. Nationstar also made repeated statements about the status of her loan to credit bureaus.

¶5 The foreclosure petition prayed for a judgment, in personam and in rem, in the amount of $129,662.64 plus interest and various expenses. Hill answered the petition and counterclaimed against U.S. Bank as well as Nationstar as a third-party defendant. Hill's counterclaims included: 1) breach of contract; 2) tortious breach of contract; 3) violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.; 4) violation of the Oklahoma SAFE Act, 59 O.S. § 2095 et seq.; 5) negligence/negligence per se; 6) false representation; 7) constructive fraud; 8) actual fraud; 9) alternative allegation of negligent misrepresentation; 10) violation of the Oklahoma Consumer Protection Act (OCPA), 15 O.S. 2011, § 751 et seq.; 11) wrongful foreclosure; 12) violation of the Real Estate Settlement Procedures Act (Regulation X), 12 U.S.C. 2601 et. seq., 12 C.F.R. Ch. X, Pt. 1024; 13) failure to release mortgage in violation of 46 O.S. § 15; and 14) violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681. Hill contended the actions of Nationstar and/or U.S. Bank caused her to incur attorney's fees, harmed her credit, caused her physical and mental pain, and caused her to refrain from pursuing job opportunities.

¶6 U.S. Bank dismissed the foreclosure lawsuit without prejudice on December 12, 2018, and released the mortgage. Nationstar recorded a replacement warranty deed in lieu of foreclosure with the Tulsa County Clerk on January 8, 2019. Hill continued to pursue her counterclaims. A five-day jury trial began on October 21, 2019. The trial focused on Hill's wrongful foreclosure claim against U.S. Bank and her third-party claims against Nationstar which included breach of contract, tortious breach of contract, negligence, and violations of the OCPA and FDCPA. Her many other claims had either been voluntarily dismissed or disposed of by the trial court prior to the end of the trial. Hill had also pursued Category I and II punitive damages. U.S. Bank and Nationstar made motions for directed verdict on many issues including Hill's claims concerning wrongful foreclosure, the OCPA, the FDCPA and punitive damages. The trial court granted directed verdict on the Category II punitive damages claim but denied the rest.

¶7 The jury found U.S. Bank liable on Hill's wrongful foreclosure (malicious prosecution) claim and Nationstar liable on Hill's claims of breach of contract, tortious breach of contract, negligence and violation of both the FDCPA and the OCPA. On January 27, 2020, a judgment was entered jointly against U.S. Bank and Nationstar for actual damages of $225,000.00 plus an additional amount of $5,427.99 for prejudgment interest (a total amount of $230,427.99). The jury also found that U.S. Bank and Nationstar had acted "in reckless disregard of the rights of others." The finding by clear and convincing evidence that a defendant has acted in "reckless disregard for the rights of others" is a necessary element of Category I punitive damages. 23 O.S. 2021, § 9.1 (B). Even though the jury found both U.S. Bank and Nationstar had acted "in reckless disregard of the rights of others" it determined, in second stage proceedings, that "no punitive damages" should be awarded against U.S. Bank. Hill was awarded Category I punitive damages exclusively against Nationstar in the amount of $225,000.00 and was further awarded statutory damages exclusively against Nationstar in the amount of $1,000.00 under the FDCPA (a total amount of $226,000.00). Hill also filed a motion for attorney's fees and costs against Nationstar. The basis for an award of attorney's fees was upon the jury's finding that Nationstar was liable under the FDCPA and OCPA. The trial court entered judgment on February 26, 2020, and awarded Hill attorney's fees in the amount of $389,040.00 and costs in the amount of $12,692.85 (a total amount of $401,732.85). This award of attorney's fees and costs was against Nationstar only.

¶8 All three parties appealed on various grounds. U.S. Bank and Nationstar filed a (joint) petition in error on February 28, 2020. Hill filed a counter- petition in error on March 16, 2020. Nationstar filed a supplemental petition in error on March 19, 2020, to address the trial court's February 26, 2020 judgment concerning attorney's fees and costs. U.S. Bank appeals the denial of its motion for directed verdict on the wrongful foreclosure claim and the resulting judgment in Hill's favor. Nationstar appeals the denial of its motion for directed verdict on the FDCPA and OCPA claims and the resulting judgment on those claims which formed the basis for an award of attorney's fees as well as statutory damages. It argues the award of both punitive damages and attorney's fees, as well as statutory damages, constitutes double recovery and the amount awarded was not apportioned and is excessive. Nationstar also challenges some of the costs assessed against it. It does not challenge its liability under the breach of contract, tortious breach of contract and negligence claims or the Category I punitive damages award. Nor does it challenge the actual damages and prejudgment interests awarded. Hill appealed the trial court's granting of the motion for directed verdict on Category II punitive damages. Hill also challenges the court's denial of an attorney's fee enhancement and the capping of the attorney's fee award related to the OCPA claim at $10,000.00.

¶9 Nationstar filed a partial motion to dismiss on December 7, 2020. Nationstar asserted Hill's appeal of the court's directed verdict on her claim for Category II punitive damages is moot because she accepted payment from Nationstar and thus accepted the benefit. Nationstar attaches an affidavit supporting Nationstar's claim that it fully paid the journal entry of judgment granting Hill actual damages in the amount of $225,000.00, statutory damages in the amount of $1,000.00, punitive damages in the amount of $225,000.00, prejudgment interest in the amount of $5,427.99 and post-judgment interest at the rate of 6.75% from January 28, 2020. The payments were made on April 1 and 6, 2020, approximately one month after the petition in error was filed. On December 14, 2020, this Court deferred the disposition of the partial motion to dismiss to the decisional stage of the appeal.

¶10 On March 30, 2022, the Oklahoma Court of Civil Appeals (COCA) affirmed the trial court in part and reversed it in part. The court held in favor of Nationstar on its motion for partial dismissal, finding Hill had accepted payment on punitive damages and it found there was no precedent for affirming Category I punitive damages and reversing the trial court's decision regarding Category II punitive damages. The court held in favor of U.S. Bank on the wrongful foreclosure (malicious prosecution) claim and found that Nationstar was exempt from the provisions of the OCPA. It also held the FDCPA was not applicable because it determined Nationstar was not a debt collector for purposes of the FDCPA. Having found that neither the OCPA nor the FDCPA applied, it determined the issue regarding double recovery was moot and it reversed the trial court's award of attorney's fees, i.e., there was no basis for such an award other than under the OCPA and FDCPA claims. The court also found that some of the costs awarded by the trial court were unauthorized and reversed its ruling on those costs. Hill petitioned this Court for certiorari which was granted on December 12, 2022.

II. STANDARD OF REVIEW

¶11 In ruling on a motion for directed verdict a trial court must consider as true all evidence and all inferences reasonably drawn therefrom that is favorable to the party against whom the motion is made; any conflicting evidence favorable to the movant must be disregarded. Woods v. Fruehauf Trailer Corp., 1988 OK 105, ¶8, 765 P.2d 770, 773. However, when the party opposing the motion for directed verdict has failed to demonstrate a prima facie case for recovery, then a motion for directed verdict should be granted. Gillham v. Lake Country Raceway, 2001 OK 41, ¶7, 24 P.3d 858, 860. A trial court's denial of a motion for directed verdict is reviewed de novo. Badillo v. Mid Century Ins. Co., 2005 OK 48, ¶24, 121 P.3d 1080, 1092.

¶12 An attorney's fee award is recoverable to a prevailing party only for the work attributable to a claim for which fees are statutorily recoverable. Lee v. Griffith, 1999 OK 32, ¶5, 990 P.2d 232, 233. "Oklahoma does not have an 'inextricably intertwined' theory upon which attorney fees do not have to be apportioned if the claims are closely related." Combs v. Shelter Mut. Ins. Co., 551 F.3d 991, 1001-02 (10th Cir. 2008). The applicant for attorney's fees bears the burden of proving the time and labor for which compensation is sought are reasonable and they relate to a claim for which fees are recoverable. Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1553 (10th Cir. 1996). What constitutes a reasonable attorney's fee award is a matter addressed to the sound discretion of the trial court to be decided based on various factors and a judgment awarding such fees will not be reversed absent an abuse of discretion. Tibbetts v. Sight "n Sound Appliance Centers, Inc., 2003 OK 72, ¶3, 77 P.3d 1042, 1046, as corrected (Sept. 30, 2003). An abuse of discretion occurs when the ruling being reviewed is based on an erroneous legal conclusion or there is no rational basis in the evidence for the decision. Id. The United States Supreme Court has held that in the enforcement of certain federal rights matters a reasonable attorney's fee is one that is adequate to attract competent counsel and the aim is to enforce the covered statutes; it is not meant as a form of economic relief to improve the financial lot of attorneys. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010). There is a strong presumption that the reasonable fee is the product of reasonable hours times a reasonable rate, i.e., the "lodestar" figure. State ex rel. Oklahoma Bar Ass'n v. Weeks, 1998 OK 83, ¶26, 969 P.2d 347, 354. In other words, there is a strong presumption that the lodestar method, alone, will reflect a reasonable attorney's fee. Parsons v. Volkswagen of America, Inc., 2014 OK 111, ¶39, 341 P.3d 662. The district court having tried the case is in the best position to evaluate the quality of counsel's representation. Blum v. Stenson, 465 U.S. 886, 899 (1984). Although the quality of representation is generally reflected in the hourly rate, an upward adjustment may be justified "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" Id. An upward adjustment of the lodestar amount is permissible only in rare and exceptional cases and the fee applicant bears the additional burden of showing the adjustment is necessary. Weeks, 1998 OK 83, ¶27, 969 P.2d at 354. In Arkoma Gas Co. v. Otis Engineering Corp., 1993 OK 27, ¶6, 849 P.2d 392, 394, this Court observed "that we have never, in State ex rel. Burk, supra, or otherwise, rejected the notion that the attorney fee should bear some reasonable relationship to the amount in controversy."

¶13 This Court may, should it vacate the opinion of the Court of Civil Appeals, address any issue properly raised in the appeal or on certiorari. Okla.Sup.Ct.R 1.180(b).

III. ANALYSIS

A. Category II Punitive Damages.

¶14 The January 27, 2020, Journal Entry of Judgment reflects that Hill sought Category I and II punitive damages on her tort claims. U.S. Bank/Nationstar moved for directed verdict which the trial court granted as to Category II punitive damages. The jury was only instructed on Category I punitive damages. Hill seeks a reversal of the trial court's granting of directed verdict and seeks a re-trial "solely" on the issue as to whether additional (Category II) punitive damages should be imposed on Nationstar. On appeal Nationstar filed a partial motion to dismiss requesting the appellate court dismiss her claim as to Category II punitive damages. Nationstar argues Hill should not be able to pursue her Category II punitive damages proposition on appeal because she accepted the total amount of the trial court's substantive judgment (not the judgment awarding attorney's fees and costs). We agree.

¶15 Following the filing of the petition in error and counter petition in error, Hill accepted payment on the underlying judgment, which included the punitive damages award plus pre- and post-judgment interest. In Hamm v. Hamm, 2015 OK 27, ¶3, 350 P.3d 124, 125, we noted that the "general black-letter rule of law" is "A party to an action who voluntarily accepts from [her] adversary the benefits accruing to [her] under a judgment cannot question the validity of such [j]udgment in this court on appeal, . . ." Id. (citations omitted). Hill notes that Hamm also mentioned the exception to the rule. We held that an exception to the rule is "If the reversal of the judgment appealed from 'cannot possibly affect the appellant's rights to the benefits secured or vested under the part of the judgment which was allowed to become final,' a party has not waived his or her right to appeal by accepting the benefits of the judgment." Id. ¶5, 350 P.3d at 125 (citation omitted). In other words, the exception applies if the judgment-accepting party's appeal may result in a more favorable judgment but has no risk of a less favorable one. Id. We also held that the "no risk exception means no risk, not negligible risk." Id. 

¶16 Hill proposes we affirm the jury's award of Category I punitive damages but we reverse the trial court's decision regarding Category II punitive damages. She asks that on remand we direct the trial court to instruct a new jury that the original jury awarded Category I punitive damages and the new jury could choose to award additional Category II punitive damages. She believes the second jury could therefore not be able to reduce the original award of Category I punitive damages; thus, there would be no risk of a less favorable judgment and the exception would apply. We disagree.

¶17 The COCA noted that Hill cited no relevant precedent that would allow such an appellate process and it could find none. "A plea for punitive damages is generally considered to be an element of recovery of the underlying cause of action; it does not constitute a separate cause of action." Rodebush By and Through Rodebush v. Oklahoma Nursing Homes, Ltd., 1993 OK 160 ¶21, 867 P.2d 1241, 1247. "There can only be one 'judgment' or one final judicial determination upon a single cause of action." Oklahoma City Urban Renewal Auth. v. City of Oklahoma City, 2005 OK 2, ¶10 n.16, 110 P.3d 550, 557 n.16 (citation omitted). "Upon entry of a judgment the cause of action is merged into the judgment and the cause of action ceases to exist." Id. (citation omitted). Hill claims this Court applied the exception in Progressive Direct Ins. Co. v. Pope, 2022 OK 4, 507 P.3d 688, wherein a party had accepted payment for property damage but was seeking a more favorable judgment which included treble damages on appeal. Progressive, however, is distinguishable from the present matter. In that case, a consent judgment referenced the parties' settlement agreement which stated the defendant had been paid on her property damage claim. Id. ¶11, 507 P.3d at 692. We noted that the consent judgment specifically reserved the claim for statutory treble damages and the parties construed the property damage claim completely separate from the claim for treble damages. Id. ¶12, 507 P.3d at 693. Here, Hill accepted the payment of punitive damages. She cites no precedent allowing punitive damages to be both affirmed and reversed on appeal. The reversal of punitive damages would subject Hill to the risk of a less favorable judgment. Therefore, we hold that the "no risk" appeal exception does not apply here. We grant Nationstar's partial motion to dismiss that portion of Hill's appeal seeking reversal of the trial court's decision concerning Category II punitive damages.

B. Wrongful Foreclosure (malicious prosecution).

¶18 The jury found U.S. Bank liable on Hill's wrongful foreclosure (malicious prosecution) claim. The journal entry of judgment held U.S. Bank to be jointly liable with Nationstar for actual damages and prejudgment interest (a total amount of $230,427.99). U.S. Bank challenged the judgment on appeal and the COCA reversed holding the trial court erred by not granting U.S. Bank's motion for directed verdict on the wrongful foreclosure (malicious prosecution) issue. We agree.

¶19 A wrongful foreclosure action is akin to a malicious prosecution action. See Malcom v. Wells Fargo Bank, N.A., No. CIV-13-0754-HE, 2014 WL 5780712, at *6 (W.D. Okla. Nov. 5, 2014); Young v. First State Bank, Watonga, 1981 OK 53, 628 P.2d 707; Vieser v. Harvey Estes Const. Co., 69 F.R.D. 378, 380 (W.D. Okla. 1975). In an action for malicious prosecution the proponent must prove five elements, one of which is the action has to have been terminated in the proponent's favor. Greenberg v. Wolfberg, 1994 OK 147, ¶14, 890 P.2d 895, 901-02; Glasgow v. Fox, 1988 OK 71, ¶12, 757 P.2d 836, 838 ("It is well established in Oklahoma that one of the elements a malicious-prosecution plaintiff must affirmatively prove is a successful termination in his favor of the original action."). We addressed the issue as to whether a dismissal without prejudice constitutes a termination in favor of the malicious prosecution proponent for the first time in Glasgow. We held "that dismissal without prejudice of the underlying . . . action was not a termination of the suit in appellant's favor which will support an action for malicious prosecution. It did not reach the substantive rights of the cause of action and thereby vindicate appellant as to the underlying action." Id. ¶15, 757 P.2d at 839. We also noted that Oklahoma's policy does not look favorably on malicious prosecution actions. Id. ¶14, 757 P.2d at 839. Later, in Greenberg, we reached the same conclusion:

For there to be a prevailing party in an action requires that the underlying proceeding not have been dismissed without prejudice. Dismissal without prejudice is not a termination favorable to the malicious-prosecution plaintiff.

Greenberg, 1994 OK 147, ¶20, 890 P.2d at 904.[3]

¶20 In the present matter, U.S. Bank dismissed its foreclosure action against Hill without prejudice prior to trial. She was not vindicated on the merits of the action and therefore the dismissal of the foreclosure action without prejudice was not a termination in Hill's favor necessary to support her malicious prosecution claim. Therefore, we reverse the trial court on that portion of the judgment.

C. Oklahoma Consumer Protection Act (OCPA)

¶21 Hill alleged Nationstar violated the Oklahoma Consumer Protection Act (15 O.S. 2021, § 751 et seq.) by engaging in unfair trade practices and/or deceptive trade practices.[4] The jury found in favor of Hill and the trial court entered judgment against Nationstar for violating the OCPA. Nationstar asserts the trial court erred by denying its motion for directed verdict on this issue. It claims the OCPA exempts Nationstar from the provisions of the act. A motion for directed verdict should be granted "if the party opposing the motion has failed to demonstrate a prima facie case for recovery." Badillo v. Mid Century Ins. Co., 2005 OK 48, ¶24, 121 P.3d 1080, 1092 (quoting Gillham v. Lake Country Raceway, 2001 OK 41, ¶7, 24 P.3d 858, 860).

¶22 Section 761.1 of title 15 of the Oklahoma Statutes provides an aggrieved consumer a private right of action against a person who engages in an unlawful practice under the act (See 15 O.S. Supp. 2023, § 753). However, certain persons are exempt under the act. Section 754 provides:

Nothing in the Oklahoma Consumer Protection Act shall apply to:

. . . .

2. Actions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state or the United States, or to acts done by retailers or other persons acting in good faith on the basis of information or matter supplied by others and without knowledge of the deceptive character of such information or matter;

Nationstar argues the § 754 exemption applies because the actions and transactions it was alleged to have engaged in are regulated by the Consumer Financial Protection Bureau (CFPB). We agree.

¶23 The CFPB is a federal agency with the authority to regulate entities like Nationstar. It was created by Congress in 2010 as an independent financial regulator within the Federal Reserve System. Seila L. LLC v. Consumer Fin. Prot. Bureau, 591 U.S. ---, 140 S. Ct. 2183, 2193 (2020). The agency is tasked with implementation and enforcement of a large number of federal consumer protection laws to ensure consumer financial products are fair, transparent, and competitive. Id. Its regulatory authority includes mortgage servicers and rule making relating to unfair or deceptive acts or practices regarding mortgage loans. See 12 U.S.C. §§ 5481(15)(A)(i), 5514, and 5538(a)(1). In addition, Congress granted the CFPB "potent enforcement powers" . . . which include "the authority to conduct investigations . . . initiate administrative adjudications, and prosecute civil actions in federal court." 140 S. Ct. at 2193. "To remedy violations of federal consumer financial law, the CFPB may seek restitution, disgorgement, and injunctive relief, as well as civil penalties." Id. The Court noted, since its inception the CFPB has obtained over $11 billion in relief for over 25 million consumers. Id. 

¶24 Hill asserts the OCPA is remedial in nature and "is to be liberally construed to effectuate its underlying purpose." (quoting Patterson v. Beall, 2000 OK 92, ¶28, 19 P.3d 839, 846). She relies upon Robinson v. Sunshine Homes, Inc., 2012 OK CIV APP 87, 291 P.3d 628, to suggest that in order for the exemption to apply it is necessary for there to be an alternative private right of action, i.e., if an agency regulates the actions or transactions at issue, its statutes must also provide that a consumer has the right to a private right of action in order for the alleged offender to be exempt from the OCPA. The Robinson opinion is only persuasive authority and does not provide such requirement. Robinson concerned a mobile home dealer who raised an exemption defense under the OCPA because its business was regulated by the Oklahoma Used Motor Vehicle and Parts Commission which was created in title 47 of the Oklahoma Statutes. The court rejected the defense and found that the Commission's authority was "limited primarily to regulating licensing matters." Id. ¶31, 291 P.3d at 635. It noted there was no indication that the Commission's regulatory activities would be extended to allow an exemption under the OCPA. Id. No provision of title 47 was offered "which provide[d] consumer protections such as a private right of action to consumers." Id. (emphasis added).

¶25 This Court has already determined that the focus on whether a § 754 exemption applies is determined by whether the action or transaction is regulated and not specifically on whether such regulations also provide a private right of action. In Estate of Hicks ex rel. Summers v. Urban East, Inc., 2004 OK 36, 92 P.3d 88, the plaintiff sued a nursing facility alleging the facility solicited false, fraudulent and misleading representations in violation of the OCPA. Id. ¶19, 92 P.3d. at 93. We noted the nursing facility was extensively regulated under the Nursing Home Care Act, 63 O.S. § 1-1900.1 et seq. Although the act did provide penalties and a private right of action, we focused on the regulated actions and transactions in determining the OCPA exemption applied to the defendant:

The "action or transaction" in the case at bar involves the services and level of care alleged to have been wrongfully represented to plaintiff's decedent. As such, the action or transaction is regulated under laws administered by the Oklahoma Department of Health, as mandated by the Nursing Home Care Act. This places the action or transaction squarely within the exemption to the Oklahoma Consumer Protection Act found at § 754(2).

Id. ¶32, 92 P.3d. at 95.

¶26 Hill would ask this court to liberally construe the § 754 exemption to require, that before an exemption could apply, the offending entity must also be regulated by an agency and such regulations must also include a private right of action. The plain language of the exemption is focused on whether the offending action or transaction is regulated by a state or federal agency and it does not require that a private right of action must also be provided. However, it is not enough that an entity is merely regulated, what is important is that the offending actions or transactions are regulated by such agency. See Sisemore v. Dolgencorp, LLC, 212 F. SupP.3d 1106, 1109 (N.D. Okla. 2016) ("The OCPA safe harbor 'does not apply when a defendant's conduct is governed in some respects by a state or federal agency, but the specific conduct at issue is not within the scope of the agency's authority.'" (citation omitted)); Dinwiddie v. Suzuki Motor of Am., Inc., 111 F. SupP.3d 1202, 1216 (W.D. Okla. 2015) ("Those courts that have addressed this issue have found the statutory exemption to be applicable when the alleged conduct about which the plaintiff has complained is regulated by a government agency.")

¶27 As in Estate of Hicks, the agency, CFPB here, provides extensive consumer protections and enforcement regarding the type of actions and transactions that occurred in the present case. The exemption in § 754 is clearly applicable to Nationstar. Hill could not demonstrate a prima facie case for recovery under the OCPA. Therefore, the portion of the judgment concerning the OCPA claim against Nationstar is reversed.

D. Fair Debt Collection Practices Act (FDCPA)

¶28 At trial, Nationstar moved for a directed verdict on Hill's claim that it violated the FDCPA in its collection efforts. The trial court denied the motion and allowed the jury to decide the issue. The jury instructions provided that in order to find a violation of the FDCPA, the jury must determine that Nationstar was a "debt collector" and that Nationstar violated one or more of the requirements of the act in connection with its attempts to collect on Hill's mortgage.[5] The jury found Nationstar violated the FDCPA in its collection efforts and awarded Hill statutory damages in the amount of $1000.00. On appeal, Nationstar asserts that it was not a debt collector under the FDCPA because Hill was "contractually current" on her mortgage payments when it took over servicing on July 1, 2012. Therefore, it argues, the trial court erred by not granting its motion for directed verdict.

¶29 The FDCPA excludes "any person collecting or attempting to collect any debt . . . which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(a)(6)(F). The United States Court of Appeals, Tenth Circuit, recently noted the Senate Report, related to the 1977 enactment of the FDCPA, found that "the committee does not intend the definition [of debt collector] to cover . . . mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing." Obduskey v. Wells Fargo, 879 F.3d 1216, 1219 (10th Cir. 2018), aff'd sub nom. Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029 (2019); S. Rep. No. 95-382, at 3-4 (1977).

¶30 The term "default" is not defined in the FDCPA. Courts have considered three approaches in determining whether a loan is in default under the FDCPA. Hoehn v. FCC Finance, LLC, 126 F. SupP.3d 472, 474-75 (D. N.J. 2015). The first approach uses the term default as defined in the original contract; the second uses the dictionary definition of default when a court found it was improper for the definition of default to be solely determined by the creditor; and the third approach looks to whether the defendant, not the plaintiff, classified the debt as in default at the relevant time. Id. Both plaintiff and defendants argue the terms of the subject note support their position. Nationstar asserts Hill was not in default, as defined in the subject note, when it took servicing. Hill asserts she presented evidence of being in default at the time Nationstar began servicing her loan, as defined in the subject note, and therefore the issue was properly submitted to the jury. We agree.

¶31 The September 6, 2002 original note provided:

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

Under the note's payment due date section it states:

3. Payments

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1st day of each month beginning on November 01, 2002.

Nationstar argues that Aurora's customer account activity statements show that in July 2012, the month that it took servicing, Aurora transferred to Nationstar $1,083.04 on this loan. It asserts the amount was for corporate advances and not mortgage payments therefore Hill's nonpayment of this amount would not have triggered a default and Hill was "contractually current." The activity statement shows the $1,083.04 corporate advance adjustment was dated July 3, 2012, which would have been two days after Hill's monthly payment was due and two days after Nationstar began servicing her loan. Further, the transfer of this amount by Aurora to Nationstar is not dispositive of whether Hill was in default on July 1, 2012. On June 5, 2012, less than a month before Nationstar began servicing the loan, Aurora sent Hill a letter stating:

Your mortgage payments of $3,347.72 for the months of May 01, 2012 and June 01, 2012 plus accrued late charges of $36.93 are past due. These past due payments must be received by the end of the month. (emphasis added).

Hill asserts in her brief that after the June 5th letter the account activity statement only shows Hill made payments to Aurora totaling $2,317.61. This left Hill $1,030.11 short on her mortgage payments. The June activity statement also only shows a corporate advance adjustment of $9.66. Even assuming the $1,030.11 was a corporate advance adjustment and adding the $9.66 amount would not equal $1,083.04. However, the June 5th letter clearly indicated that $3,347.72 was owed for mortgage payments. The letter clearly delineated other expenses that were not mortgage payments e.g., the $36.93 late charges, and did not mention any amounts for corporate advance adjustments. In addition, Nationstar sent Hill a letter in September 2012 stating that she did not make her July payment or any other mortgage payment thereafter. In ruling on a motion for directed verdict a trial court must consider as true all evidence and all inferences reasonably drawn therefrom that is favorable to the party against whom the motion is made; any conflicting evidence favorable to the movant must be disregarded. Woods v. Fruehauf Trailer Corp., 1988 OK 105, ¶8, 765 P.2d 770, 773. The evidence Hill provided supports the trial court's decision to deny the motion for directed verdict and to submit the issue to the jury. The jury determined Hill was in default at the time Nationstar began servicing her loan and found Nationstar had violated the FDCPA. The trial court entered judgment accordingly. We affirm the trial court's judgment on this issue.

E. Double Recovery

¶32 Nationstar argued that to allow Hill to recover punitive damages in addition to attorney's fees under the OCPA and FDCPA, as well as statutory damages under the FDCPA, would amount to an impermissible double recovery.[6] In Wagoner v. Bennett, 1991 OK 70, ¶3, 814 P.2d 476, 478, a case concerning a wrongful eviction, this Court held that awarding both punitive damages as well as statutory double damages under the Oklahoma Residential Landlord and Tenant Act "would be prohibited under the general rule which disallows 'double recovery' for a single injury." However, we also held that it would not violate the general rule to award both punitive damages under the plaintiff's cause of action for conversion and additionally the statutory damages under the Oklahoma Residential Landlord and Tenant Act. This is because the action for wrongful conviction and the action for conversion "involve different elements. . . . Two different wrongs are being asserted and each involves different damages." Id. ¶25, 814 P.2d. at 481.

¶33 Here, the punitive damages are based on Hill's tort claims which relate to the "wrong" of failing to honor the agreement related to the deed in lieu of foreclosure and release of mortgage. Following Nationstar's failure and tortious breach of contract, it attempted new collection efforts on the loan. These collection efforts resulted in the FDCPA violations, which represent a separate "wrong" from that which the tort causes of action are based. The FDCPA provides statutory damages which are capped at $1,000.00. 15 U.S.C. § 1692k. The FDCPA also allows a successful plaintiff to recover costs and a reasonable attorney's fee necessary for the plaintiff to vindicate his or her rights under the act. Id.; See St Bernard v. State Collection Service, Inc., 782 F. SupP.2d 823, 825-26 (D. Ariz. 2010) ("FDCPA plaintiffs 'seek[ ] to vindicate important . . . rights that cannot be valued solely in monetary terms . . . and congress has determined that the public as a whole has an interest in the vindication of statutory rights.'"(citation omitted)). In the present case, the trial court ruled that the recovery of an attorney's fee and punitive damages was not a double recovery because these are not duplicative damages. Under the facts of this case we agree and hold the statutory damages and attorney's fee allowed under the FDCPA and the punitive damages based upon Hill's tort causes of action, are not based upon a single injury and therefore do not amount to an impermissible double recovery.

F. Attorney's Fees

¶34 Out of fourteen claims made by Hill only two claims decided by the jury, the OCPA and FDCPA claims, provided a basis for an attorney's fee award and out of those two only one survives, the FDCPA claim. Nationstar asserts that if we find Hill was entitled to an attorney's fee award the amount is unreasonable. We agree. The trial court held that it could not apportion the attorney time spent on the case. It awarded approximately 98% of the time spent on all claims in making an award of $389,040.00 rather than apportioning the amount of time spent on a fee bearing claim.

¶35 An attorney's fee applicant bears the burden of proving that the time and labor for which he seeks compensation are reasonable and that they relate to a claim for which fees are recoverable. Harolds Stores, Inc. v. Dillard Dept. Stores, 82 F.3d 1533, 1553 (10th Cir. 1996); Lee v. Griffith, 1999 OK 32, ¶5, 990 P.2d 232, 233 ("An attorney fee award is recoverable to a prevailing party only for the work attributable to a claim for which such fees are statutorily recoverable."). Oklahoma does not have an "inextricably intertwined" theory upon which attorney's fees do not have to be apportioned if the claims are closely related. Combs v. Shelter Mut. Ins. Co., 551 F.3d 991, 1001-02 (10th Cir. 2008); See also State Bank & Tr. v. First State Bank of Texas, 242 F.3d 390 (10th Cir. 2000) (unpublished) ("Although we are sympathetic to the difficulty of segregating attorneys' fees between claims that are so closely related, we can find no support for an 'inextricably intertwined' exception to the general Oklahoma rule that attorneys' fees can only be awarded where there is an independent statutory basis.").

¶36 The United States Supreme Court has held that in a civil rights matter where attorney's fees are allowed, a reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010). The aim of the statute is to enforce the covered civil rights statutes and not to provide a form of "economic relief to improve the financial lot of attorneys." Id. (citation omitted). In the present case, the FDCPA also allows a successful plaintiff to recover a reasonable attorney's fee necessary to vindicate their rights under the act. The trial court's award of attorney's fees based upon almost the entirety of both fee and non-fee bearing claims produced the type of windfall the United States Supreme Court has found to be repugnant. We hold the trial court erred in doing so. We therefore reverse the attorney's fee award and remand for the trial court to determine a reasonable attorney's fee consistent with this opinion. Having determined the attorney's fee award was unreasonable, we affirm the trial court's denial of a fee enhancement. However, upon remand, Hill may reassert the argument as it relates to a fee bearing claim.

G. Costs

¶37 Hill, as the prevailing party, was entitled to recover costs. The trial court awarded Hill $12,692.85 in costs. Nationstar contends this amount included $1,676.70 of unauthorized costs. A prevailing party may recover only those litigation expenses covered by statute because the right does not exist at common law. Ashby v. Harris, 1996 OK 70, ¶7, 918 P.2d 744, 747. Section 947 of title 12 of the Oklahoma Statutes provides:

A judge of any court of this state may award the following as costs:

1. Any fees assessed by the court clerk or the clerk of the appellate court;

2. Reasonable expenses for the giving of notice, including expenses for service of summons and other judicial process and expenses for publication;

3. Statutory witness fees and reasonable expenses for service of subpoenas;

4. Costs of copying papers necessarily used at trial, limited to the amount authorized by law. If no amount is specified, costs of copying papers shall be limited to ten cents ($0.10) per page;

5. Transcripts of the trial or another proceeding that the court determines are necessary to resolve the case;

6. Reasonable expenses for taking and transcribing deposition testimony, for furnishing copies to the witness and opposing counsel, and for recording deposition testimony on videotape, but not to exceed One Hundred Dollars ($100.00) per two-hour videotape, unless the court determines that a particular deposition was neither reasonable nor necessary; and

7. Any other expenses authorized by law to be collected as costs.

Nationstar asserts $216.40 of costs to obtain certain records, $298.30 of costs for travel expenses, $1,139.62 for color copying expenses and $22.38 associated with three-hole punch charges, were unauthorized. Out of the challenged costs, the COCA found that $16.81 of the costs to obtain records were for pharmacy records that were not "used at trial" so it determined only that amount was unauthorized per § 947. The COCA also determined that the statute did not allow for deposition-related travel expenses. Id. ¶9, 918 P.2d at 747 ("[N]o statute authorizes taxing the travel expenses of the appellees' counsel . . . ."). It found that the amount charged for 2538 pages of color copies exceeded the $0.10 statutory amount and therefore reduced the allowed costs to $253.80. In addition, it found no authorization for the three-hole punch charges. In total, the COCA held the trial court erred by awarding $1,223.39 in unauthorized costs.

¶38 Neither party contests the COCA's reduction of the awarded costs on certiorari. Having reviewed the COCA's analysis, we agree that the trial court erred by awarding the $1,223.39 in unauthorized costs and therefore reverse that portion of the costs awarded by the trial court.

IV. CONCLUSION

¶39 On the basis of the foregoing, we dismiss that portion of Hill's appeal seeking review of the trial court's Category II punitive damages ruling; reverse Hill's wrongful foreclosure judgment against U.S. Bank; reverse the OCPA portion of the judgment against Nationstar; affirm the FDCPA portion of the judgment against Nationstar, including the $1,000.00 award under the FDCPA; reverse the award of attorney's fees and remand the matter to the trial court to determine a reasonable attorney's fee consistent with this opinion; and reverse $1,223.39 of the costs awarded to Hill. The remainder of the judgment is affirmed.

COURT OF CIVIL APPEALS' OPINION VACATED;
HILL'S COUNTER PETITION IN ERROR DISMISSED IN PART;
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; 
CASE REMANDED FOR FURTHER PROCEEDINGS

ALL JUSTICES CONCUR

FOOTNOTES

[1] This matter was assigned to the Oklahoma Court of Civil Appeals on February 3, 2021. On December 6, 2021, Brian G. Sayer and John P. Seidenberger, of the Sawyer Law Group, P.C., entered an appearance for the appellants U.S. Bank National Association and Nationstar Mortgage, LLC. Michael J. McKleroy, Jr., moved to withdraw as counsel which was granted by the Oklahoma Court of Civil Appeals on January 6, 2022.

[2] CJ-2013-00210; District Court of Tulsa County, State of Oklahoma.

[3] In a recent opinion, Cole v. Bank of America, N.A., 2022 OK 96, 521 P.3d 800, we held that determination on a case-by-case basis is necessary in a malicious prosecution action and in some cases the fact that a party has been dismissed without prejudice should not be an impediment to a malicious prosecution action. The facts in Cole are clearly distinguishable from the present matter before us. Cole had been successful on appeal to vacate a foreclosure judgment against him. Following the appellate decision, the bank filed a motion to dismiss without prejudice as to Cole and pursued its foreclosure action against another party. We determined Cole had been fully vindicated on the merits in the appellate process and the dismissal without prejudice was not based on procedural grounds and therefore it was not an impediment to filing a malicious prosecution action.

[4] 15 O.S. 2021, § 752 defines deceptive trade practice and unfair trade practice as:

13. "Deceptive trade practice" means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral;

14. "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers;

[5] Jury instruction No. 47 informed the jury:

Under the FDCPA, a "debt collector" is any person who (a) uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or (b) regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. However, an entity is not a "debt collector" if its activity concerns a debt which was not in default at the time it began servicing the debt. If you find that Ms. Hill's mortgage loan was in default at the time Nationstar became the servicer of her mortgage loan on July 1, 2012, you may find Nationstar to be a "debt collector" under the FDCPA.

15 U.S.C. §§ 1692a(6)

Jury instruction No. 48 informed the jury:

A violation of the FDCPA occurs if a debt collector does any of the following:

(a) uses false, deceptive, or misleading representations and/or means in connection with the collection of a debt;

(b) falsely represents the character, amount, or legal status of a debt;

(c)threatens to take action or takes action which could not be legally taken; or

(d) uses unfair and/or unconscionable means to attempt to collect a debt.

15 U.S.C. §§ 1692e and 1692f

[6] As far as Nationstar is asserting it would be an impermissible double recovery to allow attorney fees under both the OCPA and FDCPA that is now a moot issue since we do not find the OCPA is applicable to Nationstar in this matter.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2012 OK CIV APP 87, 291 P.3d 628, 
ROBINSON v. SUNSHINE HOMES, INC.
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1988 OK 71, 757 P.2d 836, 59 OBJ 1809, 
Glasgow v. Fox
Discussed

 
1988 OK 105, 765 P.2d 770, 59 OBJ 2541, 
Woods v. Fruehauf Trailer Corp.
Discussed at Length

 
1991 OK 70, 814 P.2d 476, 62 OBJ 2173, 
Wagoner v. Bennett
Discussed

 
1993 OK 27, 849 P.2d 392, 64 OBJ 957, 
Arkoma Gas Co. v. Otis Engineering Corp.
Discussed

 
1993 OK 160, 867 P.2d 1241, 64 OBJ 3709, 
Rodebush By and Through Rodebush v. Oklahoma Nursing Homes, Ltd.
Discussed

 
1994 OK 147, 890 P.2d 895, 65 OBJ 4220, 
Greenberg v. Wolfberg
Discussed at Length

 
2001 OK 41, 24 P.3d 858, 72 OBJ 1495, 
GILLHAM v. LAKE COUNTRY RACEWAY
Discussed at Length

 
2000 OK 92, 19 P.3d 839, 71 OBJ 3016, 
PATTERSON v. BEALL
Discussed

 
2003 OK 72, 77 P.3d 1042, 
TIBBETTS v. SIGHT 'n SOUND APPLIANCE CENTERS, INC.
Discussed

 
2004 OK 36, 92 P.3d 88, 
ESTATE OF HICKS v. URBAN EAST, INC.
Discussed

 
2005 OK 2, 110 P.3d 550, 
OKLAHOMA CITY URBAN RENEWAL AUTHORITY v. CITY OF OKLAHOMA CITY
Discussed

 
2005 OK 48, 121 P.3d 1080, 
BADILLO v. MID CENTURY INSURANCE COMPANY
Discussed at Length

 
1996 OK 70, 918 P.2d 744, 67 OBJ 1932, 
Ashby v. Harris
Discussed

 
2014 OK 111, 341 P.3d 662, 
HESS v. VOLKSWAGEN OF AMERICA, INC.
Discussed

 
2015 OK 27, 350 P.3d 124, 
HAMM v. HAMM
Discussed

 
2022 OK 4, 507 P.3d 688, 
PROGRESSIVE DIRECT INSURANCE CO. v. POPE
Discussed

 
2022 OK 96, 521 P.3d 800, 
COLE v. BANK OF AMERICA
Discussed

 
1981 OK 53, 628 P.2d 707, 
Young v. First State Bank, Watonga
Discussed

 
1998 OK 83, 969 P.2d 347, 69 OBJ 2647, 
State ex. rel. Oklahoma Bar Association v. Weeks
Discussed at Length

 
1999 OK 32, 990 P.2d 232, 70 OBJ 1352, 
Lee v. Griffith
Discussed at Length

Title 15. Contracts

 
Cite
Name
Level

 
15 O.S. 752, 
Definitions
Cited

 
15 O.S. 753, 
Unlawful Practices
Cited

 
15 O.S. 751, 
Short Title
Discussed

Title 23. Damages

 
Cite
Name
Level

 
23 O.S. 9.1, 
Damages for Sake of Example and Punishment of Defendant - Punitive Damages Awards by Jury
Cited

Title 46. Mortgages

 
Cite
Name
Level

 
46 O.S. 15, 
Holder Must Release - Penalty and Recovery - Definitions
Cited

Title 59. Professions and Occupations

 
Cite
Name
Level

 
59 O.S. 2095, 
Short Title
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA